CLOSED

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

Plaintiff,

v.

Johnson & Johnson, et al.,

Defendants.

CIVIL ACTION NO. 06-6077

## FIRST AMENDED CONSENT DECREE

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 7 |
| III. | PARTIES BOUND | 7 |
| IV. | DEFINITIONS | 8 |
| V. | GENERAL PROVISIONS | 17 |
| VI. | PERFORMANCE OF THE WORK BY SETTLING WORK DEFENDANTS | 19 |
| VII. | REMEDY REVIEW | 28 |
| VIII. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 29 |
| IX. | ACCESS AND INSTITUTIONAL CONTROLS | 32 |
| X. | REPORTING REQUIREMENTS | 40 |
| XI. | EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS | 42 |
| XII. | PROJECT COORDINATORS | 45 |
| XIII. | PERFORMANCE GUARANTEE | 46 |
| XIV. | CERTIFICATION OF COMPLETION | 54 |
| XV. | EMERGENCY RESPONSE | 57 |
| XVI. | PAYMENTS FOR RESPONSE COSTS | 58 |
| XVII. | INDEMNIFICATION AND INSURANCE | 71 |
| XVIII | FORCE MAJEURE | 73 |
| XIX. | DISPUTE RESOLUTION | 76 |
| XX. | STIPULATED PENALTIES | 80 |
| XXI. | COVENANTS BY PLAINTIFF | 86 |
| XXII. | COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCY | 92 |
| XXIII. | EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION | 95 |
| XXIV. | ACCESS TO INFORMATION | 96 |
| XXV. | RETENTION OF RECORDS | 98 |
| XXVI. | NOTICES AND SUBMISSIONS | 100 |
| XXVII. | EFFECTIVE DATE | 102 |
| XXVIII. | RETENTION OF JURISDICTION | 102 |
| XXIX. | APPENDICES | 102 |
| XXX. | COMMUNITY RELATIONS | 103 |
| XXXI. | MODIFICATION | 103 |
| XXXII. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 104 |
| XXXIII. | SIGNATORIES/SERVICE | 105 |
| XXXIV. | FINAL JUDGMENT | 106 |

## I. **Background**

A.     The United States of America ("United States"), on behalf of the Administrator of

the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter

pursuant to Sections 106 and 107 of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.     The United States in its complaint seeks, inter alia: (1) reimbursement of costs

incurred by EPA and the Department of Justice for response actions at the Atlantic Resources

Corporation Superfund Site ("ARC Site") and Horseshoe Road Drum Dump portion of the

Horseshoe Road Superfund Site ("HRDD portion of the Horseshoe Road Site") in Sayreville,

New Jersey (collectively "the Sites"), together with accrued interest; and (2) performance of

studies and response work by the defendants at the Sites (as hereinafter defined) consistent with

the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP"). The defendants have

indicated that they have a claim in contribution under Section 113(f)(1), 42 U.S.C. § 113(f)(1),

against the Settling Federal Agency.

C.     In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. §

9621(f)(1)(F), EPA notified the State of New Jersey (the "State") on August 4, 2005, and on

April 12, 2012, of negotiations with potentially responsible parties regarding the implementation

of the remedial design and remedial action for the Sites, and EPA has provided the State with an

opportunity to participate in such negotiations and be a party to this First Amended Consent

Decree.

D.     In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA

notified the U.S. Department of Commerce and the U.S. Fish and Wildlife Service on August 1,

1

2005, and on April 12, 2012, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustees to participate in the negotiation of this First Amended Consent Decree.

E.      The defendants that have entered into this First Amended Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Sites constitutes an imminent or substantial endangerment to the public health or welfare or the environment. The Settling Federal Agency does not admit any liability arising out of the transactions or occurrences alleged in any counterclaim asserted by the Settling Defendants.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Sites on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 29, 1995, 60 Fed. Reg. 50435, for the Horseshoe Road Site, and on September 5, 2002, 67 Fed. Reg. 56757, for the ARC Site.

G.      In response to a release or a substantial threat of a release of hazardous substances at or from the Sites, on September 23, 1996, EPA commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Sites pursuant to 40 C.F.R. § 300.430.

H.      Response Actions at the Sites are being coordinated under three operable units. Operable Unit One at the ARC Site, demolition of buildings and structures, was completed by certain of the Settling Defendants pursuant to Administrative Order on Consent, Index Number II CERCLA-02-2001-2021 in July 2003. Operable Unit Two relates to contamination of groundwater and soils at the ARC and Horseshoe Road Sites. EPA completed a Remedial

2

Investigation ("RI") Report on May 12, 1999, and EPA completed a Feasibility Study ("FS") Report for the second operable unit on September 17, 2002. EPA issued separate addenda to the FS Report on July 23, 2003 and January 6, 2004. Operable Unit Three relates to surface water and sediments in the marsh and Raritan River adjacent to the Sites.

      I.        Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action for Operable Unit Two on June 28, 2004, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action for Operable Unit Two. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

      J.        The decision by EPA on the remedial action to be implemented for Operable Unit Two at the Sites is embodied in a final Record of Decision ("OU2 ROD"), executed on September 30, 2004, on which the State had a reasonable opportunity to review and comment and on which the State has given its concurrence. The OU2 ROD includes EPA's explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

      K.        On June 15, 2007, the Court entered the original Consent Decree in this action, under which some of the Settling Defendants agreed to perform the Remedial Design ("RD") for Operable Unit Two for the ARC Site and the HRDD portion of the Horseshoe Road Site and the Remedial Action for Operable Unit Two for the ARC Site.

L.     In 2008, some of the Settling Defendants completed a Baseline Ecological Risk Assessment and Feasibility Study for Operable Unit Three for surface water and sediments in the adjacent marsh and Raritan River, pursuant to Administrative Order on Consent, Index Number CERCLA-02-2003-2033 ("OU3 AOC").

M.     EPA completed construction of the OU2 Remedial Action for the portions of the Horseshoe Road Site that are exclusive of the HRDD portion of the Horseshoe Road Site ("the ADC/SPD portions of the Horseshoe Road Site") on or about November 17, 2009.

N.     The decision by EPA on the remedial action to be implemented for Operable Unit Three at the Sites is embodied in a final Record of Decision ("OU3 ROD"), executed on June 22, 2009, on which the State had a reasonable opportunity to review and comment and on which the State has given its concurrence. The OU3 ROD includes EPA's explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

O.     Since the entry of the original Consent Decree in this action, some of the Settling Defendants have performed the Remedial Design for the Operable Unit Two for the ARC Site and the HRDD portion of the Horseshoe Road Site pursuant to the original Consent Decree.

P.     This First Amended Consent Decree is intended to resolve liability by and between the Settling Defendants and the United States for the Work and for Past and Future Response Costs and for the OU3 remedial design and remedial action. This Consent Decree also resolves any claim for contribution under Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), against the Settling Federal Agency for liability for Settling Defendants' Operable Unit Three Past Response Costs as defined herein.

4

Q. Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Work Defendants if conducted in accordance with the requirements of this First Amended Consent Decree and its appendices.

R. Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the OU2 ROD and the Work to be performed by the Settling Work Defendants shall constitute a response action taken or ordered by the President.

S. Based on documentation obtained by EPA (including material receiving reports, invoices, contracts, correspondence, pickup tickets, and ledgers), EPA has determined that the amount of the hazardous substances contributed to the ARC Site and to the HRDD portion of the Horseshoe Road Site by each De Minimis Settling Defendant does not exceed one percent (1%) of the hazardous substances contributed to the Sites and the toxic or other hazardous effects of the hazardous substances contributed to the Sites by each De Minimis Settling Defendant do not contribute disproportionately to the hazardous effects of the hazardous substances contributed to the Sites, and, based on that information, the amount and toxic or other hazardous effects of the hazardous substances contributed by each De Minimis Settling Defendant are minimal in comparison with other hazardous substances contributed to the Sites. EPA has also determined that the payment to be made by each De Minimis Settling Defendant under this First Amended Consent Decree involves only a minor portion of the costs of the Work (including the estimated $23.7 million cost of the OU2 Remedial Action at the Sites) and other response costs addressed by this First Amended Consent Decree, within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1).

T. One of the signatories to the original Consent Decree entered in 2007 in this action was the General Motors Corporation. On June 1, 2009, General Motors Corporation

5

(subsequently renamed Motors Liquidation Company) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). On March 29, 2011, the Bankruptcy Court entered an order confirming the Chapter 11 plan of liquidation of Motors Liquidation Company. The liquidation plan went into effect on March 31, 2011. On December 15, 2011, Motors Liquidation Company filed a Certificate of Dissolution with the Secretary of State of the State of Delaware and was dissolved as of such date. Accordingly, the General Motors Corporation that signed the original Consent Decree is no longer extant and is not a party to this First Amended Consent Decree.

U.     In addition to the Settling Defendants in the original Consent Decree, this First Amended Consent Decree includes the following entities as Settling Defendants, each of which is a De Minimis Settling Defendant: AT&T Corp.; The City of Philadelphia; Honeywell International Inc.; ICI Americas Inc.; International Paper Company; ITT Corporation; JP Morgan Chase Bank, N.A, on behalf of itself and JP Morgan Chase & Co.; North Jersey Media Group; Philips Electronics North America Corporation, on behalf of Magnavox; Robert Wood Johnson University Hospital Rahway; Saint Peter's University Hospital, Inc.; and Sun Chemical Corporation, on behalf of Polychrome, Inc.

V.     The Parties recognize, and the Court by entering this First Amended Consent Decree finds, that this First Amended Consent Decree has been negotiated by the Parties in good faith and implementation of this First Amended Consent Decree will expedite the cleanup of the Sites and will avoid prolonged and complicated litigation between the Parties, and that this First Amended Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

6

## II. **Jurisdiction**

1.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this First Amended Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this First Amended Consent Decree or this Court's jurisdiction to enter and enforce this First Amended Consent Decree.

## III. **Parties Bound**

2.       This First Amended Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this First Amended Consent Decree.

3.       Settling Work Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this First Amended Consent Decree and to each person representing any Settling Work Defendant with respect to the Sites or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this First Amended Consent Decree.  Settling Work Defendants or their contractors shall provide written notice of the First Amended Consent Decree to all subcontractors hired to perform any portion of the Work required by this First Amended Consent Decree.  Settling Work Defendants shall nonetheless be responsible for ensuring that their

7

contractors and subcontractors perform the Work contemplated herein in accordance with this

Consent Decree. With regard to the activities undertaken pursuant to this First Amended

Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual

relationship with the Settling Work Defendants within the meaning of Section 107(b)(3) of

CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. Definitions

4.      Unless otherwise expressly provided herein, terms used in this First Amended

Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA

shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms

listed below are used in this First Amended Consent Decree or in the appendices attached hereto

and incorporated hereunder, the following definitions shall apply:

"ARC Site" shall mean the Atlantic Resources Corporation Superfund Site located at

Horseshoe Road, in the City of Sayreville, Middlesex County, New Jersey designated as Block

256, Lot 2.03 on the Municipal Tax Map of the Borough of Sayreville and any areas where

hazardous substances have migrated therefrom and shown generally on the map attached as

Appendix C.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and

Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working

day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any

period of time under this First Amended Consent Decree, where the last day would fall on a

8

Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this First Amended Consent Decree as provided in Paragraph 107.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"First Amended Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurred or incurs from and after the date of lodging of the Original Consent Decree in reviewing or developing plans, reports, and other items pursuant to the Original Consent Decree and this First Amended Consent Decree, in verifying or overseeing the implementation of the Work, or otherwise implementing, overseeing, or enforcing the Original Consent Decree and this First Amended Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred by the United States for the Sites pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), and XV (Emergency Response), Paragraph 88 of Section XXI (Work Takeover), and Section XXX (Community Relations). Future Response Costs shall also include all Interim Response Costs. Future Response Costs shall also include all Interest on the

9

those HRDD Past Costs that the Settling Work Defendants and the United States on behalf of the
Settling Federal Agency have agreed to reimburse EPA under Paragraph 54.a. and 54.b. of this
First Amended Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the
period from August 31, 2011 to the Effective Date. Future Response Costs incurred through
August 31, 2011, are resolved as specified in Paragraph 57.b. of this First Amended Consent
Decree, except that as between the Settling Federal Agency and the Settling Work Defendants
such costs will be addressed in accordance with Paragraph 55.c. and d.

"Horseshoe Road Site" shall mean the Horseshoe Road Superfund Site, including the
HRDD portion of the Horseshoe Road Site, the ADC portion of the Horseshoe Road Site, and the
SPD portion of the Horseshoe Road Site.

"HRDD portion of the Horseshoe Road Site" or "HRDD Site" shall mean the Horseshoe
Road Drum Dump portion of the Horseshoe Road Superfund Site adjacent to the ARC Site
located on portion(s) of Block 246, Lot 1 and Block 246, Lot 1.01 on the Municipal Tax Map of
the Borough of Sayreville and any areas where hazardous substances have migrated therefrom
and shown generally on the map attached as Appendix C.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a)
paid by the United States in connection with the ARC and HRDD Sites between October 31,
2004 and the Effective Date, or (b) incurred by the United States in connection with the ARC
and HRDD Sites prior to the Effective Date but paid after that date, other than costs that fall
within the first sentence of the definition of Future Response Costs.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA
Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on

October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NJDEP" shall mean the New Jersey Department of Environmental Protection and any successor departments or agencies of the State.

"Operable Unit One" shall mean those response actions taken by certain of Settling Defendants to remove buildings and structures at the ARC Site pursuant to Administrative Order on Consent, Index Number II CERCLA-02-2001-2021.

"Operable Unit Two" shall mean the response actions for contamination of soils and groundwater at the Sites.

"Operable Unit Three" shall mean the response actions for contamination of surface water and sediments from the ARC Site and the Horseshoe Road Site in the marsh and Raritan River located adjacent to such sites.

"Original Consent Decree" shall mean the Consent Decree in this action signed by the Court on May 16, 2007 and entered by the Court on June 15, 2007.

"Paragraph" shall mean a portion of this First Amended Consent Decree identified by an Arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

11

"Past Response Costs re ARC Site" or "ARC Past Costs" shall mean Past Response Costs as defined in the Original Consent Decree, i.e., "all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the ARC Site through October 31, 2004, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date."

"Past Response Costs re HRDD Site" or "HRDD Past Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the HRDD Site through October 31, 2004, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through August 31, 2011.

"Past Response Costs" shall mean all ARC Past Costs and HRDD Past Costs.

"Performance Guarantee Trust" or "Performance Guarantee Trust Fund" shall mean the trust fund established pursuant to Paragraph 46.a. of this First Amended Consent Decree pursuant to a trust agreement substantially in the form attached hereto as Appendix I.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in The Remedial Action Objectives Section of the OU2 ROD and Section II of the SOW.

"Plaintiff" shall mean the United States.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to common or statutory law by an instrument that is recorded by the owner (or person authorized by

12

the owner) in the appropriate land records office. A "deed notice" under New Jersey law is one type of Proprietary Control.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. § 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Record of Decision for Operable Unit Two" or "OU2 ROD" shall mean the EPA Record of Decision relating to Operable Unit Two at the ARC Site and the Horseshoe Road Site signed on September 30, 2004, by the Regional Administrator, EPA Region 2, or his/her delegate, and all attachments thereto. The OU2 ROD is attached as Appendix A.

"Record of Decision for Operable Unit Three" or "OU3 ROD" shall mean the EPA Record of Decision relating to Operable Unit Three at the ARC Site and the Horseshoe Road Site signed on June 22, 2009, by the Regional Administrator, EPA Region 2, or his/her delegate, and all attachments thereto

"Remedial Action" shall mean those activities to be undertaken by the Settling Work Defendants at the Sites to implement the OU2 ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11 of this First Amended Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities undertaken by certain of the Settling Defendants to develop the final plans and specifications for the Remedial Action at the ARC and HRDD Sites as defined herein pursuant to the Remedial Design Work Plan.

13

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 10 of the Original Consent Decree in this action and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this First Amended Decree identified by a Roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendix F and shall include De Minimis Settling Defendants and Settling Work Defendants.

"Settling Defendants' Operable Unit One Response Costs" shall mean all Response Costs incurred by Settling Defendants for performance of Operable Unit One at the ARC Site, which work was completed by certain of the Settling Defendants pursuant to Administrative Order on Consent, Index Number II CERCLA-02-2001-2021 in July of 2003.

"Settling Defendants' Operable Unit Two Response Costs" shall mean all Response Costs incurred by Settling Defendants after the date of lodging of the Original Consent Decree for performance of Work under the Original Consent Decree and this First Amended Consent Decree, including without limitation the payment of Future Response Costs pursuant to the Original Consent Decree and this First Amended Consent Decree and any response actions taken pursuant to Section VII.

"Settling Defendants' Operable Unit Three Past Response Costs" shall mean all response costs incurred by Settling Defendants for performance of their obligations under and pursuant to Administrative Order on Consent, Index Number CERCLA-02-2003-2033, and EPA oversight costs relating thereto.

14

"Settling Federal Agency" shall mean the United States Department of Defense, including all of its departments, offices, agencies, activities, commands, and instrumentalities, including without limitation, the United States Defense Logistics Agency, which is resolving any claims which have been or could be asserted against it with regard to the Sites as provided in the Original Consent Decree and this First Amended Consent Decree.

"Settling Work Defendants" shall mean those Parties identified in Appendix G.

"De Minimis Settling Defendants" shall mean those Parties identified in Appendix H.

"Sites" shall mean the ARC Site and the HRDD portion of the Horseshoe Road Site, which together encompass approximately 7 acres, located along Horseshoe Road in Sayreville, Middlesex County, New Jersey, and depicted generally on the map attached as Appendix C.

"State" shall mean the State of New Jersey.

"Statement of Work to the First Amended Consent Decree" or "SOW" shall mean the statement of work for implementation of the Remedial Design at the Sites and Remedial Action at the Sites, as set forth in Appendix B to this First Amended Consent Decree and any modifications made in accordance with this First Amended Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Work Defendants to supervise and direct the implementation of the Work under this First Amended Consent Decree.

"Trust Fund," "ARC/HRDD RD/RA Trust Fund," or "RD/RA Trust Fund" shall mean the trust fund that was established as a qualified settlement fund ("QSF") pursuant to the RD/RA Trust Fund Agreement or Declaration of Trust that was attached to the Original Consent Decree

15

as Appendix E to that consent decree. Upon the Effective Date of this First Amended Consent Decree, the RD/RA Trust Fund established as a QSF under Appendix E to the Original Consent Decree shall be terminated and any remaining funds will be deposited into the Performance Guarantee Trust.

"ARC/HRDD RD/RA Environmental Remediation Trust" or "RD/RA ERT" shall mean the trust fund that was established as an Environmental Remediation Trust by certain of the Settling Defendants to fund their collective share of the Work under the Original Consent Decree, which, upon the Effective Date of this First Amended Consent Decree, shall, as amended, apply ab initio to this First Amended Consent Decree. A copy of the trust agreement, as proposed to be amended, which established this trust fund is attached here to as Appendix J.

"United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities, which includes without limitation EPA, the Settling Federal Agency and any federal natural resources trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities Settling Work Defendants are required to perform under the Original Consent Decree and this First Amended Consent Decree, except those required by Section XXV (Retention of Records).

16

## V. **General Provisions**

5.     Objectives of the Parties.  The objectives of the Parties in entering into this First Amended Decree are to protect public health or welfare or the environment at the Sites by the design and implementation of response actions at the Sites by the Settling Work Defendants, to reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants and the claims of the Settling Defendants which have been or could have been asserted against the United States with regard to the Sites as provided in this First Amended Consent Decree.

6.     Commitments by Settling Defendants and Settling Federal Agency.

a.     Settling Work Defendants shall finance and perform the Work in accordance with this First Amended Consent Decree, the OU2 ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Work Defendants and approved by EPA pursuant to the Original Consent Decree or this First Amended Consent Decree.  Settling Work Defendants shall also reimburse the United States for Future Response Costs as provided in this First Amended Consent Decree.  Settling Work Defendants shall also reimburse the EPA Hazardous Substance Superfund for a portion of HRDD Past Costs, as provided in this First Amended Consent Decree.

b.     The United States, on behalf of the Settling Federal Agency, shall reimburse the EPA Hazardous Substance Superfund for a portion of HRDD Past Costs and the Settling Work Defendants for an allocated share of their response costs, as provided in this First Amended Consent Decree.

17

c.      As set forth in Paragraph 60 of this First Amended Consent Decree, each De Minimis Settling Defendant will deposit into a dedicated escrow account its respective share of $1,518,942, which share is specified in a separate agreement between the Settling Work Defendants and the De Minimis Settling Defendants, and the De Minimis Settling Defendants commit to direct the escrow agent for the escrow account to transfer the funds to the Performance Guarantee Trust that will be established by the Settling Work Defendants in accordance with Paragraph 46.a. of this First Amended Consent Decree. The United States' covenant not to sue the De Minimis Settling Defendants set forth in Paragraph 85 becomes effective upon notification to the United States of the payment of the escrowed funds to the Performance Guarantee Trust.

d.      The obligations of Settling Work Defendants to finance and perform the Work and to pay amounts owed the United States under this First Amended Consent Decree are joint and several. In the event of the insolvency or other failure of any one or more of the Settling Work Defendants to implement the requirements of this First Amended Consent Decree, the remaining Settling Work Defendants shall complete all such requirements.

7.      Compliance With Applicable Law. All activities undertaken by Settling Work Defendants pursuant to this First Amended Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Work Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the OU2 ROD and the SOW. The activities conducted pursuant to this First Amended Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

18

8.    Permits.

a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the
NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e.,
within the areal extent of contamination or in very close proximity to the contamination and
necessary for implementation of the Work). Where any portion of the Work that is not on-site
requires a federal or state permit or approval, Settling Work Defendants shall submit timely and
complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    The Settling Work Defendants may seek relief under the provisions of
Section XVIII (Force Majeure) of this First Amended Consent Decree for any delay in the
performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit
required for the Work.

c.    This First Amended Consent Decree is not, and shall not be construed to
be, a permit issued pursuant to any federal or state statute or regulation.

## VI. **PERFORMANCE OF THE WORK BY SETTLING WORK DEFENDANTS**

9.    Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Work Defendants
pursuant to Sections VI (Performance of the Work by Settling Work Defendants), VII (Remedy
Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency
Response) of this First Amended Consent Decree shall be under the direction and supervision of
the Supervising Contractor, the selection of which shall be subject to disapproval by EPA.
Settling Work Defendants notified EPA under the Original Consent Decree in writing of the

19

name, title, and qualifications of a Supervising Contractor and have demonstrated to EPA's

satisfaction that the proposed contractor has a quality system that complies with ANSI/ASQC

E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection

and Environmental Technology Programs," (American National Standard, January 5, 1995), by

submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP

should be prepared in accordance with "EPA Requirements for Quality Management Plans

(QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by

EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time

thereafter, Settling Work Defendants propose to change a Supervising Contractor, Settling Work

Defendants shall give further notice to EPA, and must obtain an authorization to proceed from

EPA before the new Supervising Contractor performs, directs, or supervises any Work under this

First Amended Consent Decree.

      b.     If EPA disapproves a proposed Supervising Contractor, EPA will notify

Settling Work Defendants in writing. Settling Work Defendants shall submit to EPA a list of

contractors, including the qualifications of each contractor, that would be acceptable to them

within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will

provide written notice of the names of any contractor(s) that it disapproves and an authorization

to proceed with respect to any of the other contractors. Settling Work Defendants may select any

contractor from that list that is not disapproved and shall notify EPA of the name of the

contractor selected within 21 days of EPA's authorization to proceed.

      c.     If EPA fails to provide written notice of its authorization to proceed or

disapproval as provided in this Paragraph and this failure prevents the Settling Work Defendants

from meeting one or more deadlines in a plan approved by the EPA pursuant to this First

Amended Consent Decree, Settling Work Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

       10.     Remedial Design.

           a.     Following receipt of written notification from EPA of the approval of the Supervising Contractor under the Original Consent Decree, Settling Work Defendants previously submitted to EPA and the State a work plan for the design of the Remedial Action at the Sites ("Remedial Design Work Plan" or "RD Work Plan"). The Remedial Design Work Plan provided for design of the remedy set forth in the OU2 ROD for the Sites, in accordance with the Original Consent Decree SOW and for achievement of the Performance Standards and other requirements set forth in the OU2 ROD, the Original Consent Decree and/or the Original Consent Decree SOW. The Remedial Design Work Plan was incorporated into and became enforceable under the Original Consent Decree and remains enforceable under this First Amended Consent Decree. Settling Defendants previously submitted to EPA and the State a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

           b.     The Remedial Design Work Plan includes plans and schedules for implementation of all remedial design tasks identified in the Original Consent Decree SOW, including, but not limited to, plans and schedules for the completion of: (1) design sampling and analysis plan (including, but not limited to, a Remedial Design Quality Assurance Project Plan (RD QAPP) in accordance with Section VIII (Quality Assurance, Sampling and Data Analysis)); and (2) a Health and Safety Contingency Plan (HSCP); and also includes schedules for the

21

completion of: (1) a preliminary design submittal; (2) a pre-final design submittal; and (3) a final design submittal. In addition, the Remedial Design Work Plan includes a schedule for completion of the Remedial Action Work Plan. After approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submittal of the Health and Safety Plan for all field activities to EPA and the State, Settling Defendants implemented the Remedial Design Work Plan. The Settling Work Defendants submitted to EPA and the State all plans, submittals and other deliverables required under the approved Remedial Design Work Plan for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Work Defendants shall not commence further Remedial Design activities at the Sites.

      11.    Remedial Action.

        a.    Within 60 days after award of the Remedial Action contract as specified in the SOW, Settling Work Defendants shall submit to EPA and the State a work plan for the performance of the Remedial Action at the Sites ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the OU2 ROD and achievement of the Performance Standards, in accordance with this First Amended Consent Decree, the OU2 ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this First Amended Consent Decree. At the same time as they submit the Remedial Action Work Plan, Settling Work Defendants shall submit to EPA and the State a Health and Safety Plan for field activities required by the Remedial Action Work Plan which

22

conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

      b.    The Remedial Action Work Plan shall include those items listed in Section IX of the SOW. The Remedial Action Work Plan also shall include the methodology for implementation of the Construction Quality Assurance Plan and a schedule for implementation of all Remedial Action tasks identified in the final design submittal and shall identify the initial formulation of the Settling Work Defendants' Remedial Action Project Team (including, but not limited to, the Supervising Contractor).

      c.    Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Work Defendants shall implement the activities required under the Remedial Action Work Plan. The Settling Work Defendants shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Work Defendants shall not commence physical Remedial Action activities at the Sites prior to approval of the Remedial Action Work Plan.

      12.    The Settling Work Defendants shall continue to implement the Remedial Action, including long-term monitoring as provided in the SOW, until the Performance Standards are achieved and for so long thereafter as is otherwise required under this First Amended Consent Decree.

23

13.    Modification of the SOW or Related Work Plans.

    a.    If EPA determines that modification to the work specified in the SOW
and/or in the work plans developed pursuant to the SOW or the Original Consent Decree SOW is
necessary to achieve and maintain the Performance Standards or to carry out and maintain the
effectiveness of the remedy set forth in the OU2 ROD, EPA may require that such modification
be incorporated in the SOW and/or such work plans, provided, however, that a modification may
only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the
remedy selected in the OU2 ROD.

    b.    For the purposes of this Paragraph 13 and Paragraph 51 only, the "scope
of the remedy selected in the OU2 ROD" is to:

    reduce or eliminate the direct contact threat associated with contaminated soil to levels
    protective of a commercial or industrial use, and protective of the environment by
    remediation of such soils to the cleanup goals established in the ROD;

    prevent public exposure to contaminated groundwater that presents a significant risk to
    human health and the environment;

    minimize or eliminate contaminant migration to the groundwater and surface waters; and

    minimize or eliminate organic vapor migration from groundwater into future indoor
    environments that may be built on the sites.

    c.    If Settling Work Defendants object to any modification determined by
EPA to be necessary pursuant to Paragraph 13.a. and b., they may seek dispute resolution

24

pursuant to Section XIX (Dispute Resolution), Paragraph 71 (record review). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

       d.       Settling Work Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with Paragraph 13.a.-c.

       e.     (i)      The Middlesex County Utilities Authority ("MCUA") has an easement, believed to be 50 feet in width, over portions of the ARC and HRDD Sites, within which there are two force mains ("Easement Area"). EPA approved the Final Remedial Design Report in 2011. In order to protect and maintain the stability of soils supporting the MCUA force mains at the Sites, the approved Remedial Design does not require excavation of soils below the uppermost two feet (2') from the ground surface in the areas within 25 feet of the outermost edge of the force mains. These 25 feet areas include the Easement Area and the portions of the 25 feet buffer widths that extend beyond the Easement Area. The portions of the 25 feet buffer widths that extend beyond the Easement Area are referred to herein as the "Buffer Area." The approved Remedial Design also contains specifications for other controls designed to protect and maintain the stability of soils supporting the MCUA force mains. The approved Remedial Design provides for the excavation of contaminated soils and replacement with clean soils in the uppermost two feet (2') from the ground surface in the Easement Area and the Buffer Area.

         (ii)      In the future, the MCUA may need to excavate or otherwise disturb soils in areas within the Easement Area and/or Buffer Area in order to install, operate, maintain, repair or replace the force mains. These areas are referred to herein as the Pipeline Work Area(s). The

Settling Work Defendants may prepare and provide to MCUA and EPA a proposed Soil Management Plan ("SMP") to address the handling of soils within the Pipeline Work Area(s). If the Settling Work Defendants prepare such a proposed SMP, the proposed SMP will include provisions (1) requesting MCUA to provide notice to the Settling Work Defendants and EPA of any specific intentions or plans to excavate or otherwise disturb such soils, (2) addressing the establishment of a staging area to allow for sampling and characterization of excavated soils, and (3) addressing criteria for evaluating the suitability of soils to be used as backfill in the areas from which soils have been excavated.

(iii)     Despite their efforts, the Settling Work Defendants and the MCUA have not resolved certain issues between them relating to the responsibility for the handling of contaminated soils that are not remediated as part of the Work in the Easement Area and the Buffer Area that MCUA may need to excavate or otherwise disturb in order to install, operate, maintain, repair or replace the force mains in the Easement Area and the responsibility for implementing a soil management plan in the Pipeline Work Area(s). Accordingly, (a) this First Amended Consent Decree does not resolve these issues, (b) the Settling Work Defendants reserve all rights and remedies available at law or equity against all persons not a party to this First Amended Consent Decree, including, but not limited to, MCUA respecting remediation of soils in the Easement Area and the Buffer Area, and (c) nothing in this First Amended Consent Decree shall be construed to waive or nullify any rights or remedies available at law or equity that the MCUA may have respecting remediation of soils that are not remediated as part of the Work in the Easement Area and the Buffer Area.

      f.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this First Amended Consent Decree.

      14.      Settling Defendants acknowledge and agree that nothing in this First Amended Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

      15.      a.      Settling Work Defendants shall, prior to any off-Site shipment of Waste Material from the Sites to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

      (1)      The Settling Work Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Work Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

      (2)      The identity of the receiving facility and state will be determined by the Settling Work Defendants following the award of the contract for Remedial Action construction. The

27

Settling Work Defendants shall provide the information required by Paragraph 15.a. as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.      Before shipping any hazardous substances, pollutants, or contaminants from the Sites to an off-site location, Settling Work Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. Section 300.440. Settling Work Defendants shall only send hazardous substances, pollutants, or contaminants from the Sites to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. Remedy Review

16.     Periodic Review. Settling Work Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action for the Sites is protective of human health and the environment at least every five years from commencement of physical Remedial Action activities at the Sites as required by Section 121(c) of CERCLA and any applicable regulations.

17.     EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Sites in accordance with the requirements of CERCLA and the NCP.

18.     Opportunity To Comment. Settling Work Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to

28

Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

19.     Settling Work Defendants' Obligation To Perform Further Response Actions. If EPA selects further response actions for the Sites based on a determination that the Remedial Action is not protective of human health or the environment, the Settling Work Defendants shall undertake such further response actions. Settling Work Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the Remedial Action is not protective of human health and the environment, or (2) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 71 (record review).

20.     Submissions of Plans. If Settling Work Defendants are required to perform the further response actions pursuant to Paragraph 19, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Work Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII. Quality Assurance, Sampling, and Data Analysis

21.     Settling Work Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon

29

notification by EPA to Settling Work Defendants of such amendment. Amended guidelines shall

apply only to procedures conducted after such notification. Prior to the commencement of any

monitoring project under this First Amended Consent Decree, Settling Work Defendants shall

submit to EPA for approval, after a reasonable opportunity for review and comment by the State,

a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and

applicable guidance documents. If relevant to the proceeding, the Parties agree that validated

sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA

shall be admissible as evidence, without objection, in any proceeding under this First Amended

Consent Decree. Settling Work Defendants shall ensure that EPA personnel and its authorized

representatives are allowed access at reasonable times to all laboratories utilized by Settling

Work Defendants in implementing this First Amended Consent Decree. In addition, Settling

Work Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA

pursuant to the QAPP for quality assurance monitoring. Settling Work Defendants shall ensure

that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform

all analyses according to accepted EPA methods. Accepted EPA methods consist of those

methods which are documented in the "Contract Lab Program Statement of Work for Inorganic

Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated

February 1988, and any amendments made thereto during the course of the implementation of

this Decree; however, upon approval by EPA, after opportunity for review and comment by the

State, the Settling Work Defendants may use other analytical methods which are as stringent as

or more stringent than the CLP- approved methods. Settling Work Defendants shall ensure that

all laboratories they use for analysis of samples taken pursuant to this First Amended Consent

Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Work Defendants

30

shall only use laboratories that have a documented Quality System which complies with
ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental
Data Collection and Environmental Technology Programs," (American National Standard,
January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2),"
(EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA
may consider laboratories accredited under the National Environmental Laboratory Accreditation
Program (NELAP) as meeting the Quality System requirements. Settling Work Defendants shall
ensure that all field methodologies utilized in collecting samples for subsequent analysis
pursuant to this Decree will be conducted in accordance with the procedures set forth in the
QAPP approved by EPA.

     22.    Upon request, the Settling Work Defendants shall allow split or duplicate samples
to be taken by EPA or its authorized representatives. Settling Work Defendants shall notify EPA
not less than 10 days in advance of any sample collection activity unless shorter notice is agreed
to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems
necessary. Upon request, EPA shall allow the Settling Work Defendants to take split or
duplicate samples of any samples it takes as part of the Plaintiff's oversight of the Settling Work
Defendants' implementation of the Work.

     23.    Settling Work Defendants shall submit to EPA 3 copies of the results of all
sampling and/or tests or other data obtained or generated by or on behalf of Settling Work
Defendants with respect to the Sites in the implementation of this First Amended Consent Decree
unless EPA agrees otherwise.

24.    Notwithstanding any provision of this First Amended Consent Decree, the United

States hereby retains all of its information gathering and inspection authorities and rights,

including enforcement actions related thereto, under CERCLA, RCRA and any other applicable

statutes or regulations.

## IX. Access and Institutional Controls

25.    If the Sites, or any other property where access and/or land/water use restrictions

are needed to implement this First Amended Consent Decree, is owned or controlled by any of

the Settling Work Defendants, such Settling Work Defendants shall:

a.    commencing on the date of lodging of this First Amended Consent

Decree, provide the United States and the Settling Work Defendants, and their representatives,

contractors, and subcontractors, with access at all reasonable times to the Sites, or such other

property, for the purpose of conducting any activity related to this First Amended Consent

Decree including, but not limited to, the following activities:

(1)    Monitoring the Work;

(2)    Verifying any data or information submitted to the United States;

(3)    Conducting investigations relating to contamination at or near the Sites;

(4)    Obtaining samples;

(5)    Assessing the need for, planning, or implementing additional response

actions at or near the Sites;

32

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 88 of this First Amended Consent Decree;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Work Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Work Defendants' compliance with this First Amended Consent Decree; and

(10)    Determining whether the Sites or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this First Amended Consent Decree; and

(11)    Implementing, monitoring, maintaining, reporting on, and enforcing any land/water use restrictions or other institutional controls.

b.      such Settling Work Defendants shall, commencing on the date of lodging of this First Amended Consent Decree, refrain from using the Sites, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures performed or to be performed pursuant to this First Amended Consent Decree. Such restrictions include, but are not limited to, well installation and groundwater use restrictions; and, as to the Sites, execution of deed notice(s); and

c.       such Settling Work Defendants shall, upon request by EPA, execute and record in the County Clerk's Office of Middlesex County, State of New Jersey, Proprietary Controls that (i) grant a right of access for the purpose of conducting any activity related to this First Amended Consent Decree including, but not limited to, those activities listed in Paragraph 25.a of this First Amended Consent Decree, and (ii) grant the right to enforce the land/water use restrictions listed in Paragraph 25.b of this First Amended Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures performed or to be performed pursuant to this First Amended Consent Decree. Such Settling Work Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Work Defendants and their representatives, and/or (iv) other appropriate grantees. If any Proprietary Controls are granted to any Settling Work Defendants pursuant to this Paragraph 25.c., then such Settling Work Defendants shall monitor, maintain, report on, and enforce such Proprietary Control(s). Such Settling Work Defendants shall, within 45 days of the request by EPA, submit to EPA for review and approval with respect to such property:

(1)      A draft Proprietary Control, in substantially the form attached hereto as Appendix D or E (for easement) or consistent with the applicable provisions of the New Jersey Model Deed Notice (for deed notice) (as specified by EPA in its request), that is enforceable under the laws of the State of New Jersey, and

(2)      a current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the Proprietary Control to be free and clear of all prior liens and encumbrances (except when EPA waives the release or

34

subordination of such prior liens or encumbrances or when, despite best efforts, Settling Work Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the Proprietary Control and the title evidence, such Settling Work Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the Proprietary Control with the Middlesex County Clerk's Office. Within 30 days of recording the Proprietary Control, such Settling Work Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Control showing the clerk's recording stamps. If the Proprietary Control is to be conveyed to the United States, the Proprietary Control and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

26.     If the Sites, or any other property where access and/or land/water use restrictions are needed to implement this First Amended Consent Decree, is owned or controlled by persons other than any of the Settling Work Defendants, Settling Work Defendants shall use best efforts to secure from such persons:

a.     an agreement to provide access thereto for Settling Work Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this First Amended Consent Decree including, but not limited to, those activities listed in Paragraph 25.a of this First Amended Consent Decree;

35

b. an agreement, enforceable by the Settling Work Defendants and the United States, to refrain from using the Sites, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures performed or to be performed pursuant to this First Amended Consent Decree. Such restrictions include, but are not limited to, well installation and groundwater use restrictions at the Sites and, as to the Sites, execution of deed notice(s); and

c. if requested by EPA, the execution and recordation in the Middlesex County Clerk's Office of Proprietary Controls that (i) grant a right of access for the purpose of conducting any activity related to this First Amended Consent Decree including, but not limited to, those activities listed in Paragraph 25.a and 26.a of this First Amended Consent Decree, and (ii) grant the right to enforce the land/water use restrictions listed in Paragraph 25.b and 26.b of this First Amended Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures performed or to be performed pursuant to this First Amended Consent Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Work Defendants and their representatives, and/or (iv) other appropriate grantees. If any Proprietary Control(s) executed and recorded pursuant to this Paragraph 26.c. provide any Settling Work Defendants with rights or obligations to monitor, maintain, report on, and/or enforce such Proprietary Control(s), then such Settling Work Defendants shall monitor, maintain, report on, and/or enforce such Proprietary Control(s). Within 45 days of request by EPA, Settling Work Defendants shall submit to EPA for review and approval with respect to such property:

36

   (1) A draft Proprietary Control, in substantially the form attached hereto as Appendix D or E (for easement) or consistent with the applicable provisions of the New Jersey Model Deed Notice (for deed notice) (as specified by EPA in its request), that is enforceable under the laws of the State of New Jersey, and

   (2) a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the Proprietary Control to be free and clear of all prior liens and encumbrances (except for any prior liens or encumbrances existing as of the Effective Date or except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Work Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the Proprietary Control and the title evidence, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the Proprietary Control shall be recorded with the Middlesex County Clerk's Office. Within 30 days of the recording of the Proprietary Control, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Control showing the clerk's recording stamps. If the Proprietary Control is to be conveyed to the United States, the Proprietary Control and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

27.    For purposes of Paragraphs 25 and 26 of this First Amended Consent Decree, "best efforts" regarding Jack Kaplan, Clover Chemical Co., Inc. or Musa Shihadeh/Atlantic Development Corporation, shall mean a written request that he/it unconditionally provide the components of access enumerated in Paragraphs 25 and 26. "Kaplan" shall include Mr. Kaplan, Atlantic Resources Corporation, and/or any other person or entity in which Mr. Kaplan or any of his successors, assigns or heirs has an interest. Kaplan shall also include any insurer which claims any interest or right in any property through Kaplan. There shall be no requirement that Settling Work Defendants pay any compensation to Kaplan, Clover Chemical Co., Inc., or Musa Shihadeh/Atlantic Development Corporation. For any other landowners, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, or other Proprietary Controls, and/or an agreement to release or subordinate a prior lien or encumbrance. EPA agrees to designate Settling Work Defendants as its authorized representatives under Section 104(e) of CERCLA for purposes of the Consent to Access agreement dated May 5, 2005 and executed by First Connecticut Holding Group and to advise First Connecticut Holding Group in writing of that decision. If First Connecticut Holding Group revokes or otherwise repudiates the Consent to Access agreement dated May 5, 2005, Settling Work Defendants shall attempt to obtain access by the means provided in and in accordance with this Section IX. If (a) any access or land/water use restriction agreements required by Paragraphs 26.a or 26.b of this First Amended Consent Decree are not obtained within 45 days of the date of entry of this First Amended Consent Decree, (b) any access easements or restrictive easements or other Proprietary Controls required by Paragraph 26.c of this First Amended Consent Decree are not submitted to EPA in draft form within 45 days of the due date under this First Amended Consent Decree, or (c) Settling Work

38

Defendants are unable to obtain an agreement pursuant to Paragraph 25.c or Paragraph 26.c from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement or other Proprietary Control being created pursuant to this First Amended Consent Decree within 45 days of the due date under this First Amended Consent Decree, Settling Work Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Work Defendants have taken to attempt to comply with Paragraph 25 or 26 of this First Amended Consent Decree. The United States may, as it deems appropriate, assist Settling Work Defendants in obtaining access, agreements to restrict land/water use, easement(s) or other Proprietary Controls, or the release or subordination of a prior lien or encumbrance. Settling Work Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Payment of Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, easements or other Proprietary Controls, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

28.    If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the OU2 ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Work Defendants shall cooperate with EPA's efforts to secure such governmental controls.

29.    Notwithstanding any provision of this First Amended Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require

39

land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. **Reporting Requirements**

30.    In addition to any other requirement of this First Amended Consent Decree, Settling Work Defendants shall submit to EPA and the State 3 copies of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this First Amended Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Work Defendants or their contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this First Amended Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Work Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks. Settling Work Defendants shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this First Amended Consent Decree until EPA notifies the Settling Work Defendants pursuant to Paragraph 51.b of Section XIV (Certification of Completion). If

40

requested by EPA, Settling Work Defendants shall also provide briefings for EPA to discuss the progress of the Work.

31.     The Settling Work Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

32.     Upon the occurrence of any event during performance of the Work that Settling Work Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Work Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or, in the event that the EPA Project Coordinator  is not available, the Emergency Response Section, Region 2, United States Environmental Protection Agency.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

33.     Within 20 days of the onset of such an event, Settling Work Defendants shall furnish to Plaintiff a written report, signed by the Settling Work Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto.  Within 30 days of the conclusion of such an event, Settling Work Defendants shall submit a report setting forth all actions taken in response thereto.

34.     Settling Work Defendants shall submit 8 copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  Settling

41

Work Defendants shall simultaneously submit 3 copies of all such plans, reports and data to the State. Upon request by EPA, Settling Work Defendants shall submit in electronic form all portions of any report or other deliverable Settling Work Defendants are required to submit pursuant to the provisions of this First Amended Consent Decree.

35.     All reports and other documents submitted by Settling Work Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Work Defendants' compliance with the terms of this First Amended Consent Decree shall be signed by an authorized representative of the Settling Work Defendants.

## XI.  EPA Approval of Plans and Other Submissions

36.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this First Amended Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Work Defendants modify the submission; or (e) any combination of the above. However, EPA shall not modify a submission without first providing Settling Work Defendants at least one notice of deficiency and an opportunity to cure within 14 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

37.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 36(a), (b), or (c), Settling Work Defendants shall proceed to take any

42

action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 36(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

38.    Resubmission of Plans.

a.    Upon receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Work Defendants shall, within 14 days or such longer time as specified by EPA in such notice or in the last sentence of this Paragraph 38.a., correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 14-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 39 and 40. Settling Work Defendants shall have a period of 28 days (or such longer time as specified by EPA in the notice) to correct deficiencies and resubmit with respect to a notice of disapproval of the Remedial Action Work Plan.

b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Work Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Work Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

43

39. In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Work Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Work Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

40. If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Work Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Work Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

41. All plans, reports, and other items required to be submitted to EPA under this First Amended Consent Decree shall, upon approval or modification by EPA, be enforceable under this First Amended Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this First Amended Consent Decree, the approved or modified portion shall be enforceable under this First Amended Consent Decree.

44

## XII. **Project Coordinators**

42.     Within 20 days of lodging this First Amended Consent Decree, Settling Work Defendants and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators, but only to the extent such designees differ from those identified pursuant to the Original Consent Decree. If a Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Work Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Work Defendants' Project Coordinator shall not be an attorney for any of the Settling Work Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Sites representative for oversight of performance of daily operations during remedial activities.

43.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this First Amended Consent Decree. EPA's Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this First Amended Consent Decree and to take any necessary response action when s/he determines that conditions at the Sites constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

45

44.     EPA's Project Coordinator and the Settling Work Defendants' Project Coordinator
will meet, at a minimum, on a monthly basis.

## XIII. **Performance Guarantee**

45.     In order to ensure the full and final completion of the Work, Settling Work
Defendants shall establish and maintain a Performance Guarantee for the benefit of EPA in the
amount of $22,251,091. The performance guarantee, which must be satisfactory in form and
substance to EPA, shall be in the form of one or more of the following mechanisms (provided
that, if Settling Work Defendants intend to use multiple mechanisms, such mechanisms shall be
limited to surety bonds guaranteeing payment, letters of credit, trust funds, and insurance
policies):

a. A surety bond unconditionally guaranteeing payment and/or performance of the Work
that is issued by a surety company among those listed as acceptable sureties on Federal bonds as
set forth in Circular 570 of the U.S. Department of the Treasury;

b. One or more irrevocable letters of credit, payable to or at the direction of EPA, that is
issued by one or more financial institution(s) (i) that has the authority to issue letters of credit
and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State
agency;

c. A trust fund established for the benefit of EPA that is administered by a trustee (i) that
has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by
a U.S. Federal or State agency;

d. A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

e. A demonstration by one or more Settling Work Defendants that each such Settling Work Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other Federal or any State environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied;

f. A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Work Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Work Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

46. a. (i) Settling Work Defendants have selected, and EPA has found satisfactory, as an initial Performance Guarantee under this First Amended Consent Decree, pursuant to Paragraph 45.c., the establishment of a trust fund in the amount specified in Paragraph 45 above pursuant to a Performance Guarantee Trust Agreement in the form attached

47

hereto as Appendix I. Within 30 days after the Effective Date of this First Amended Consent

Decree, Settling Work Defendants shall execute all instruments or other documents required in

order to make the selected Performance Guarantee legally binding in a form substantially

identical to the documents attached hereto as Appendix I, and such Performance Guarantee shall

thereupon be fully effective and Settling Work Defendants shall notify the De Minimis Settling

Defendants of the establishment of the Performance Guarantee Trust. Within 45 days after the

Effective Date of this First Amended Consent Decree, Settling Work Defendants shall submit

copies of all executed instruments or other documents required in order to make the selected

Performance Guarantee legally binding to the EPA Regional Financial Management Officer in

accordance with Section XXVI (Notices and Submissions) and to the United States and EPA as

specified in Section XXVI.

(ii)     The initial Performance Guarantee trust fund amount of

$22,251,091 referred to in Paragraph 46.a.(i) above shall be funded as follows: (A) within 60

days of the entry of this First Amended Consent Decree, Settling Work Defendants shall deposit

$16,394,603.34 into the Performance Guarantee Trust; (B) within ten (10) days of notification by

the Settling Work Defendants of the establishment of the Performance Guarantee Trust, the De

Minimis Settling Defendants shall make the deposit of $1,518,942 in escrowed funds required by

Paragraph 60 into the Performance Guarantee Trust; and (C) in accordance with the requirements

of Paragraph 55.b., the United States, on behalf of the Settling Federal Agency, shall make the

payment of $4,337,545.66 to the Performance Guarantee Trust required by Paragraph 55.b.

Within ten (10) days of the date each of the deposits into the Performance Guarantee Trust

pursuant to this Subparagraph is received, Settling Work Defendants shall send notice, with

48

documentation, to the United States and EPA, in accordance with Section XXVI (Notices and Submissions), that the deposit has been received.

        b.      If at any time during the effective period of this First Amended Consent Decree, the Settling Work Defendants provide a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 45.e or Paragraph 45.f above, Settling Work Defendants shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these methods unless otherwise provided in this First Amended Consent Decree, including but not limited to (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at: *http:/www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf;* (ii) the annual re-submission of such reports and statements within ninety days after the close of each such entity's fiscal year; and (iii) the notification of EPA within ninety days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1). For purposes of the Performance Guarantee methods specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Work required under this First Amended Consent Decree; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Work; the terms "owner" and "operator" shall be deemed to refer to each Settling Work Defendant making a demonstration under Paragraph 45.e; and the terms "facility" and "hazardous waste facility" shall be deemed to include the Sites.

47.     In the event that EPA determines at any time that a Performance Guarantee

provided by any Settling Work Defendant pursuant to this Section is inadequate or otherwise no

longer satisfies the requirements set forth in this Section, whether due to an increase in the

estimated cost of completing the Work or for any other reason, or in the event that any Settling

Work Defendant becomes aware of information indicating that a Performance Guarantee

provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements

set forth in this Section, whether due to an increase in the estimated cost of completing the Work

or for any other reason, Settling Work Defendants, within thirty days of receipt of notice of

EPA's determination or, as the case may be, within forty-five days of any Settling Work

Defendant becoming aware of such information, shall obtain and present to EPA for approval a

proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 45 of

this Consent Decree that satisfies all requirements set forth in this Section XIII.  In seeking

approval for a revised or alternative form of Performance Guarantee, Settling Work Defendants

shall follow the procedures set forth in Paragraph 49.b(ii) of this Consent Decree.  Settling Work

Defendants' inability to post a Performance Guarantee for completion of the Work shall in no

way excuse performance of any other requirements of this First Amended Consent Decree,

including, without limitation, the obligation of Settling Work Defendants to complete the Work

in strict accordance with the terms hereof.

48.     Funding for Work Takeover.  The commencement of any Work Takeover

pursuant to Paragraph 88 of this First Amended Consent Decree shall trigger EPA's right to

receive the benefit of any Performance Guarantee(s) provided pursuant to Paragraph 45.a, 45.b,

45.c, 45.d, or 45.f, and at such time EPA shall have immediate access to resources guaranteed

under any such Performance Guarantee(s), whether in cash or in kind, as needed to continue and

complete the Work assumed by EPA under the Work Takeover. If for any reason EPA is unable

to promptly secure the resources guaranteed under any such Performance Guarantee(s), whether

in cash or in kind, necessary to continue and complete the Work assumed by EPA under the

Work Takeover, or in the event that the Performance Guarantee involves a demonstration of

satisfaction of the financial test criteria pursuant to Paragraph 45.e or 45.f(ii), Settling Work

Defendants shall immediately upon written demand from EPA deposit into an account specified

by EPA, in immediately available funds and without setoff, counterclaim, or condition of any

kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be

performed as of such date, as determined by EPA. In addition, if at any time EPA is notified by

the issuer of a performance guarantee under Paragraph 45.a., 45.b., or 45.d. that such issuer

intends to cancel the performance guarantee mechanism it has issued, then, unless Settling

Defendants provide a substitute performance guarantee mechanism in accordance with this

Section XIII no later than 30 days prior to the impending cancellation date, EPA shall be entitled

(as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the

funds guaranteed under the then-existing performance guarantee. All EPA Work Takeover costs

not reimbursed under this Paragraph shall be reimbursed under Section XVI (Payments for

Response Costs).

     49.    Modification of Amount and/or Form of Performance Guarantee.

     a.  Reduction of Amount of Performance Guarantee. If Settling Work Defendants

believe that the estimated cost to complete the remaining Work has diminished below the amount

set forth in Paragraph 45 above, Settling Work Defendants may, on any anniversary date of entry

of this First Amended Consent Decree, or at any other time agreed to by the Parties, petition

EPA in writing to request a reduction in the amount of the Performance Guarantee provided

pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed. Settling Work Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Work Defendants shall follow the procedures set forth in Paragraph 49.b(ii) of this First Amended Consent Decree. If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Work Defendants of such decision in writing. After receiving EPA's written acceptance, Settling Work Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 49.b(ii). In the event of a dispute, Settling Work Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute. No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 47 or 49.b of this First Amended Consent Decree.

      b.  Change of Form of Performance Guarantee.

      (i)  If, after entry of this First Amended Consent Decree, Settling Work Defendants desire to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Work Defendants may, on any anniversary date of entry of this First Amended Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The

52

submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 49.b(ii) of this First Amended Consent Decree. Any decision made by EPA on a petition submitted under this Paragraph 49.b(i) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Work Defendants pursuant to the dispute resolution provisions of this First Amended Consent Decree or in any other forum.

(ii) Settling Work Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Work Defendants shall submit such proposed revised or alternative form of Performance Guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI ("Notices and Submissions") of this First Amended Consent Decree. EPA shall notify Settling Work Defendants in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this Paragraph 49.b(ii). Within ten days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Work Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling Work Defendants shall

53

submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Regional Financial Management Officer within thirty days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXVI ("Notices and Submissions") of this First Amended Consent Decree and to the United States and EPA as specified in Section XXVI.

        c. Release of Performance Guarantee. If Settling Work Defendants receive written notice from EPA in accordance with Paragraph 51 hereof that the Work has been fully and finally completed in accordance with the terms of this First Amended Consent Decree, or if EPA otherwise so notifies Settling Work Defendants in writing, Settling Work Defendants may thereafter release, cancel, or discontinue the Performance Guarantee(s) provided pursuant to this Section. Settling Work Defendants shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this subparagraph. In the event of a dispute, Settling Work Defendants may release, cancel, or discontinue the Performance Guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.

## XIV. Certification of Completion

50. Completion of Construction Certification

        a. Within 30 days after Settling Work Defendants believe they have completed the construction of all components of the Remedial Action, they shall notify EPA and the State in writing. Settling Work Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Work Defendants, EPA and the State to determine whether

54

the Remedial Action has been constructed in accordance with the OU2 ROD, the Remedial Design, this First Amended Consent Decree, the SOW, any construction contract specifications established pursuant thereto, and any modifications thereto.

        b.    Based on the pre-certification inspection, EPA and the State shall submit in writing to the Settling Work Defendants comments regarding whether construction has been completed in accordance with this First Amended Consent Decree. If, after taking all action in response to the written comments by EPA and the State, the Settling Work Defendants believe construction is complete, subject to a punch list of minor items, Settling Work Defendants shall submit the Final Remedial Construction Report prepared by a professional engineer registered in New Jersey stating that all components of the Remedial Action have been constructed in accordance with the OU2 ROD, the Remedial Design, this First Amended Consent Decree, the SOW, any construction contract specifications established pursuant thereto, and any modifications thereto. The Final Remedial Construction Report shall contain the punch list of minor items to be completed. The Final Remedial Construction Report shall contain the following statement, signed by a responsible corporate official of a Settling Work Defendant or the Settling Work Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after the pre-certification inspection and review of the Final Remedial Construction Report, and upon completion of all punch list items by the Settling Work Defendants, EPA, after a reasonable opportunity for review and comment by the State, determines that construction has been completed, EPA will so notify the Settling Work Defendants in writing.

If, after the pre-certification inspection and the review of the Final Remedial

Construction Report, EPA, after a reasonable opportunity for review and comment by the State,

determines that any portion of the construction has not been completed, EPA will notify Settling

Work Defendants of the activities that must be undertaken to complete construction. Settling

Work Defendants shall undertake all activities described in the notice, in accordance with the

specifications and schedules established therein, subject to their right to invoke the dispute

resolution procedures set forth in Section XIX (Dispute Resolution). Upon a finding by EPA,

after a reasonable opportunity for review and comment by the State, that the work described in

the notice has been completed, EPA will so notify the Settling Work Defendants in writing.

     51.    Completion of the Work.

        a.  Within 90 days after Settling Work Defendants conclude that all phases of the

Work have been fully performed, Settling Work Defendants shall schedule and conduct a pre-

certification inspection to be attended by Settling Work Defendants and EPA. If, after the pre-

certification inspection, the Settling Work Defendants still believe that the Work has been fully

performed, Settling Work Defendants shall submit a written report by a registered professional

engineer stating that the Work has been completed in full satisfaction of the requirements of this

First Amended Consent Decree. The report shall contain the following statement, signed by a

responsible corporate official of a Settling Work Defendant or the Settling Work Defendants'

Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information
> contained in or accompanying this submission is true, accurate and complete. I am aware
> that there are significant penalties for submitting false information, including the
> possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this First Amended Consent Decree, EPA will notify Settling Work Defendants in writing of the activities that must be undertaken by Settling Work Defendants pursuant to this First Amended Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the OU2 ROD," as that term is defined in Paragraph 13.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the First Amended Consent Decree and the SOW or require the Settling Work Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Work Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b. If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Work Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this First Amended Consent Decree, EPA will so notify the Settling Work Defendants in writing.

## XV. Emergency Response

52.     In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Sites that constitutes an emergency situation or may present an immediate threat to public health or welfare or the

57

environment, Settling Work Defendants shall, subject to Paragraph 53, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator. If EPA's Project Coordinator is not available, the Settling Work Defendants shall notify the EPA Superfund Hotline, Region 2, at (732) 548-8730. Settling Work Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Work Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Work Defendants shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

53.     Nothing in the preceding Paragraph or in this First Amended Consent Decree shall be deemed to limit any authority of the United States a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Sites, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Sites, subject to Section XXI (Covenants by Plaintiff).

## XVI. Payments for Response Costs

54.     a.  Payment by Settling Work Defendants for HRDD Past Costs.     Within 30 days after the Effective Date, Settling Work Defendants shall pay to EPA $1,433,816.54 in payment of HRDD Past Costs.

58

                        i.        This payment shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of New Jersey after the Effective Date. The payment instructions provided by the Financial Litigation Unit shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify this payment. The FLU shall provide the payment instructions to the representative of the Settling Work Defendants identified in Section XXVI (Notices and Submissions) of this First Amended Consent Decree. Settling Work Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change in accordance with Section XXVI. The payment shall reference the CDCS number, Site/Spill ID Number 02-BT, and DJ # 90-11-3-480/4.

                        ii.        At the time of payment, Settling Work Defendants shall send notice that such payment has been made to the United States and to EPA, in accordance with Section XXVI (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, and by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268. Such notice shall also reference the CDCS number, Site/Spill ID Number 02/BT, and DJ # 90-11-3-480/4.

                        iii.        The total amount to be paid pursuant to this Paragraph 54.a shall be deposited into the HRDD Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the HRDD Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

b.      Payment by Settling Federal Agency for HRDD Past Costs.  As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agency, will make a payment of $545,390.21 to the EPA Hazardous Substance Superfund in payment of HRDD Past Costs.

(i)   The total amount to be paid pursuant to this Paragraph 54.b. shall be deposited into the HRDD Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the HRDD Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

(ii)   If the payment to the EPA Hazardous Substance Superfund required by this Paragraph 54.b is not made as soon as reasonably practicable, the appropriate EPA Regional Branch Chief may raise any issues relating to payment to the appropriate U.S. Department of Justice ("DOJ") Assistant Section Chief for the Environmental Defense Section. In any event, if this payment is not made within 120 days after the Effective Date, EPA and DOJ have agreed to resolve the issue within 30 days, in accordance with a letter agreement dated December 28, 1998.

(iii)   In the event that the payment required by this paragraph is not made within 120 days of the Effective Date, Interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the Effective Date and accruing through the date of the payment.

55.   Additional Payments on behalf of Settling Federal Agency for OU2 ARC and HRDD Work and Future Response Costs and Payment on behalf of Settling Federal Agency for Settling Defendants' Operable Unit Three Past Response Costs.   a.      The United States, on

60

behalf of the Settling Federal Agency, has made payment under the Original Consent Decree in an amount that the parties agreed was an amount equal to the sum of Settling Federal Agency's allocated share of certain costs specified in Paragraph 54.a. of the Original Consent Decree, including an allocated share of $4,329,082 of the cost of doing the Work.

b.     As soon as reasonably practicable after the Effective Date and after written notification to the United States of the establishment of the Performance Guarantee Trust and the account information necessary for Electronic Funds Transfer ("EFT") to the Performance Guarantee Trust, and consistent with Paragraph 56, the United States, on behalf of the Settling Federal Agency, shall make an additional payment of $4,003,388 to the Settling Work Defendants for Settling Defendants' Operable Unit Two Response Costs and shall make a payment of $334,157.66 to the Settling Work Defendants for Settling Defendants' Operable Unit Three Past Response Costs.  These payments may be made as one combined payment in the amount of $4,337,545.66.  Payment to the Settling Work Defendants of the combined payment amount of $4,337,545.66 shall be made by Electronic Funds Transfer to the Performance Guarantee Trust in accordance with EFT instructions to be provided by the Settling Work Defendants.

c.     The United States, on behalf of the Settling Federal Agency agrees that it shall make additional payments equal to its allocated share of the Settling Defendants' Operable Unit Two Response Costs to the extent that the cost to perform the Work exceeds the cost of $18,857,271, in accordance with the provisions of subparagraph 55.d. below.

d.     In addition to the payments referred to in Paragraphs 55.a. and 55.b. above, the United States, on behalf of the Settling Federal Agency, shall pay into the RD/RA

Environmental Remediation Trust its allocated share of Settling Defendants' Operable Unit Two Response Costs in excess of $18,857,271 (the "SFA Reopener Amount") incurred performing the Work, including the Settling Federal Agency's allocated share of the Future Response Costs paid by the Settling Work Defendants and any response actions taken pursuant to Section VII.

(i)    The United States' allocated share of Settling Defendants' Operable Unit Two Costs shall be based upon the Settling Federal Agency's volumetric share of 4,395,461.04 pounds of material reportedly shipped to the ARC Site as a proportion of the total volumetric share of 15,950,992.80 pounds of material reportedly shipped to the ARC Site by the Settling Defendants, the Settling Federal Agency and other ARC Site customers who are participating in a private allocation process with the Settling Defendants. In the event that any Settling Work Defendant files for bankruptcy and cannot pay its share, the Settling Work Defendants shall notify the Settling Federal Agency and shall allocate said bankrupt Settling Work Defendant's share of such contribution proportionately among all other Settling Work Defendants and the Settling Federal Agency, provided, however, that it shall not be deemed that the bankrupt Settling Work Defendant "cannot pay its share" (A) to the extent that deposit(s) for its share were made into the Performance Guarantee Trust prior to such Settling Work Defendant filing for bankruptcy, as long as such deposit(s) are not set aside by a court of competent jurisdiction as a disallowed preferential transfer within the meaning of the Bankruptcy Code, and/or (B) to the extent its share has been addressed by any alternate Performance Guarantee mechanism under Paragraphs 45.a., b., or d. that is approved under Paragraph 49.b. of this First Amended Consent Decree.

(ii)    Settling Work Defendants' claims for payment under this Paragraph 55.d. shall be made in accordance with the following provisions:

A.    The Settling Work Defendants may submit claims to the

Section Chief of the Environmental Defense Section, whose address is listed in Section XXVI,

no more often than every twelve months.

B.    The Settling Work Defendants shall include with such claims a

certified accounting as to the incurrence and payment of the SFA Reopener Amount (with the

first submission); EPA's request(s) for Future Response Costs; a statement of Settling

Defendants' Operable Unit Two Response Costs incurred during the period covered by the

statement; sufficient documentation to allow verification of the accuracy and payment of the

costs claimed; and the following certification:

> Being duly authorized by each Settling Work Defendant, I,
> _____, certify (1) that Settling Work Defendants have incurred
> Settling Defendants' Operable Unit Two Costs in excess of $18,857,271;
> (2) that the Settling Defendants' Operable Unit Two Costs in excess of
> $18,857,271 and referenced in the attached invoice were properly incurred
> during the period beginning _____ and ending _____ ("Covered
> Period"); (3) that the invoiced costs were incurred consistent with the
> National Contingency Plan, the EPA Operable Unit 2 Record of Decision
> for the Horseshoe Road and Atlantic Resources Corporation Sites, and the
> Original Consent Decree, entered on June 15, 2007 in the case styled
> United States v. Johnson & Johnson, et al.,  Civil Action No. 06-6077 or
> the First Amended Consent Decree entered in that action on or about
> _____, as applicable ("RD/RA Consent Decree"); (4) that the invoiced
> costs have been paid in full; and (5) that payment by the United States of
> the invoiced costs (in full or as agreed at the conclusion of any dispute
> resolution) shall be accepted by Settling Defendants as payment in full of
> all sums owed by the United States under the RD/RA Consent Decree for
> the Settling Federal Agency's allocated share of response costs incurred
> during the Covered Period.

(iii)   Money paid into the RD/RA Environmental Remediation Trust by

the United States, on behalf of the Settling Federal Agency, shall be used solely to pay for the

Work pursuant to this Consent Decree, but may be used to reimburse Settling Work Defendants

for up to 27.556% of the amounts paid by them in excess of the SFA Reopener Amount to pay for such Work prior to the additional payments on behalf of the Settling Federal Agency pursuant to this Paragraph 55.d.

(iv) The Dispute Resolution provisions of this Consent Decree do not apply to disputes raised pursuant to this paragraph or payment disputes between the Settling Work Defendants and the Settling Federal Agency. Instead, if the Settling Federal Agency in good faith questions or contests any invoiced Settling Defendants' Operable Unit Two Response Costs under this subparagraph, the Settling Federal Agency shall have the right to request additional documentation from the Settling Work Defendants. The Settling Federal Agency shall further have the right to withhold payment of such disputed amount; provided, however, that the Settling Federal Agency shall give the Settling Work Defendants written notice concisely describing the matter(s) in dispute within 60 days of the receipt of such demand for payment of additional Response Costs and shall promptly make a good faith offer to resolve the dispute. Representatives of each party involved in the dispute shall promptly confer and expeditiously attempt, in good faith, to resolve the dispute. The negotiations may involve such consultation, communications and meetings as may be effective in satisfactorily resolving the dispute. Any party may apply to the Court for relief if the dispute is not resolved by the parties within 60 days after receipt of the notice. Any such dispute shall not excuse performance by the Settling Work Defendants of their obligations under this First Amended Consent Decree.

(v) In the event that payment of undisputed costs contained in the written demand is not made within 120 days of the date of receipt of the demand for payment of such costs, Interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S. C. § 9607(a), commencing on the 121st day after the Settling

Federal Agency agreement to pay the additional response costs and accruing through the date of payment.

(vi)     Sums paid under this subparagraph 55.d. shall be paid to the RD/RA Environmental Remediation Trust. Payment shall be made by Electronic Funds Transfer in accordance with instructions to be provided by the Settling Work Defendants.

e.     The United States, on behalf of the Settling Federal Agency, shall not be responsible for any portion of Settling Work Defendants' Stipulated Penalties, as described in Section XX, relating to any Work conducted under the Original Consent Decree or this First Amended Consent Decree.

56.     The Parties to this First Amended Consent Decree recognize and acknowledge that the payment obligations of the Settling Federal Agency under this First Amended Consent Decree can only be paid from appropriated funds legally available for such purpose. Nothing in this First Amended Consent Decree shall be interpreted or construed as a commitment or requirement that any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

57.     <u>Payments for Future Response Costs.</u>

a.     Settling Work Defendants shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan (i) that the Settling Defendants have not already paid pursuant to bills received under the Original Consent Decree or (ii) that are not resolved pursuant to Paragraph 57.b. below. These payments shall include payments for Future Response Costs that were incurred prior to the Effective Date, but were not billed and paid prior to the Effective Date. On a periodic basis the United States will send Settling Work Defendants bills

65

requiring payment that include a SCORPIOS Report and DOJ-prepared cost summary. Settling

Work Defendants shall make all payments within 30 days of Settling Work Defendants' receipt

of each bill requiring payment, except as otherwise provided in Paragraph 58.

      b.    Resolution re Certain Consent Decree Future Response Costs and Certain
OU3 RI/FS AOC Costs.

      (i)  On October 20, 2011, EPA billed the Settling Defendants $229,988.67

for certain costs incurred through August 31, 2011, under the Future Response Costs provisions

of the Original Consent Decree, which bill has not yet been paid. EPA has also incurred

$225,114.46 for costs relating to EPA headquarters and the Department of Justice relating to the

ARC and HRDD Sites that were incurred between October 31, 2004 and August 31, 2011, which

shall be deemed Future Response Costs under this Decree.

      (ii)  On October 20, 2011, EPA billed the Settling Defendants who are

also Respondents on the OU3 RI/FS AOC $371,961.74, under Paragraph 87 of the AOC, which

bill has not been paid. Pursuant to Paragraph 92 of the AOC, the Settling Defendants who are

also Respondents on the OU3 RI/FS AOC are entitled to a credit against any Settling Defendant

Site-related costs in the amount of 50% of the costs incurred by them for work performed under

the AOC (exclusive of attorneys fees and EPA oversight costs), up to a cap of $350,000. EPA

agreed to consider adjusting the cap in the event of a change in the Statement of Work under the

AOC. The Settling Work Defendants have requested that EPA consider adjusting the cap.

      (iii)  In resolution of (A) Future Response Costs incurred through August

31, 2011 that have not yet been paid (including, without limitation, the Future Response Costs

referred to in Paragraph 57.b.(i) above) and (B) the OU3 RI/FS AOC October 20, 2011 bill and

credit referred to in Paragraph 57.b.(ii) above, the Settling Work Defendants shall: (1) make

66

payment of $229,988.67, plus Interest between the date of the bill and the date of payment, on

the bill referred to in Paragraph 57.b.(i) above, in accordance with the payment instructions in

that bill and (2) make payment of $36,810.81, in accordance with the payment instructions

provided in Paragraph 57.c. below. These payments shall be made within 30 days after the

Effective Date. The payments under this Paragraph 57.b.(iii)(1) and (2) shall be considered part

of Settling Defendants' Operable Unit Two Response Costs.

      c.    Payments under Paragraph 57.a. and Paragraph 57.b.(iii)(2) shall be made

to EPA by Electronic Funds Transfer. To effect payment via EFT, Settling Defendants shall

instruct their bank to remit payment in the required amount via EFT using the following

information, or such other updated EFT information that EPA may subsequently provide to

Settling Defendants:

- Amount of payment
- Bank: Federal Reserve Bank of New York
- Account code for Federal Reserve Bank account receiving the payment: 68010727
- Federal Reserve Bank ABA Routing Number: 021030004
- SWIFT Address: FRNYUS33
  33 Liberty Street
  New York, NY 10045
- Field Tag 4200 of the Fedwire message should read:
  D 68010727 Environmental Protection Agency
- Name of remitter: Name of Settling Work Defendants
- DJ # 90-11-2-480/4
- Site/Spill Identifier: 02-BT

At the time of payment, Settling Work Defendants shall send notice that such payment has been

made to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, and by

mail at:

67

United States Environmental Protection Agency
Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, OH 45268

     d.     At the time of payments under Paragraph 57.a. and Paragraph 57.b.(iii)(1) and (2), Settling Work Defendants shall also send notice that payment has been made to the United States and to EPA, in accordance with Section XXVI (Notices and Submissions).

     e.     The total amounts to be paid by Settling Work Defendants pursuant to Paragraph 57.a. and Paragraph 57.b.(iii) shall be deposited in the ARC or HRDD Site Special Accounts within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the ARC or HRDD Sites, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

     58.     Settling Work Defendants may contest payment of any Future Response Costs under Paragraph 57.a. if they determine that the United States has made a mathematical error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the United States and to EPA pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, the Settling Work Defendants shall within the 30 day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 57. Simultaneously, the Settling Work Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of New Jersey and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Work Defendants shall send to the United States and to EPA, as provided in Section

68

XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Work Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Work Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 57. If the Settling Work Defendants prevail concerning any aspect of the contested costs, the Settling Work Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 57; Settling Work Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Work Defendants' obligation to reimburse the United States for its Future Response Costs.

59.     In the event that the payments required by Paragraphs 54.a. and 57.b.(iii)(2) are not made within 30 days of the Effective Date or the payments required by Paragraph 57.a. are not made within 30 days of the Settling Work Defendants' receipt of the bill, Settling Work Defendants shall pay Interest on the unpaid balance. The Interest to be paid under this Paragraph 59 on the payments required under Paragraphs 54.a and 57.b.(iii)(2) shall begin to accrue on the Effective Date. The Interest on Future Response Costs under Paragraph 57.a. shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Work

Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Work Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 75. The Settling Work Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 57.c.

  60. Payments by De Minimis Settling Defendants

    a. Each De Minimis Settling Defendant will deposit into a dedicated escrow account, initially held by Gibbons P.C., Escrow Agent for the De Minimis Settling Defendants, its respective share of $1,518,942, which share is specified in a separate agreement between the Settling Work Defendants and the De Minimis Settling Defendants. The total amount of money deposited into the escrow account by the De Minimis Settling Defendants is at least $1,518,942. Within ten (10) days of notification by the Settling Work Defendants of establishment of the Performance Guarantee Trust, the De Minimis Settling Defendants shall direct the Escrow Agent for the escrow account to pay $1,518,942 from the escrow account to the Performance Guarantee Trust. Within fifteen (15) days after establishment of the Performance Guarantee Trust, the Settling Work Defendants shall notify the United States and EPA in writing whether the Performance Guarantee Trust has received the funds and, if so, the exact amount received from the escrow account, and shall provide a copy of the bank documentation evidencing the transfer.

    b. The payment from the escrow account to the Performance Guarantee Trust required under this Paragraph shall be made by intra bank or wire transfer in accordance with instructions provided by the Settling Work Defendants to the escrow agent for the De Minimis Settling Defendants.

## XVII. **Indemnification and Insurance**

61.     Settling Work Defendants' Indemnification of the United States.

a.     The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Work Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Settling Work Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Work Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this First Amended Consent Decree, including, but not limited to, any claims arising from any designation of Settling Work Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Work Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Work Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this First Amended Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Work Defendants in carrying out activities pursuant to this First Amended Consent Decree. Neither the Settling Work Defendants nor any such contractor shall be considered an agent of the United States.

71

b.      The United States shall give Settling Work Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 61, and shall consult with Settling Defendants prior to settling such claim.

62.     Settling Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Work Defendants and any person for performance of Work on or relating to the Sites, including, but not limited to, claims on account of construction delays.  In addition, Settling Work Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Work Defendants and any person for performance of Work on or relating to the Sites, including, but not limited to, claims on account of construction delays.

63.     No later than 15 days before commencing any on-site Work, and except as otherwise provided in this paragraph, Settling Work Defendants shall secure, or shall require their contractors to secure, and shall maintain until the first anniversary of EPA's Certification of Completion pursuant to Paragraph 51.b. of Section XIV (Certification of Completion) comprehensive general liability insurance with limits, for any one occurrence, of (a) at least $ 1 million for bodily injury or death to any one person, (b) at least $ 2 million for bodily injury or death to persons, and (c) at least $ 5 million for property damage; automobile liability insurance with limits of 5 million dollars, combined single limit; and umbrella coverage of $ 5 million over and above all comprehensive general liability coverages, naming the United States and the Middlesex County Utilities Authority as an additional insured.  Settling Work Defendants may

72

maintain comprehensive general liability insurance and automobile liability insurance with limits of 1 (one) million dollars each in the period between the first anniversary of EPA's Completion of Construction Certification pursuant to Paragraph 50.b. of Section XIV and the first anniversary of EPA's Certification of Completion of the Work pursuant to Paragraph 51.b. of Section XIV (Certification of Completion). In addition, for the duration of this First Amended Consent Decree, Settling Work Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Work Defendants in furtherance of this First Amended Consent Decree. Prior to commencement of the Work under this First Amended Consent Decree, Settling Work Defendants shall provide to EPA, with a copy to MCUA, certificates of such insurance and a copy of each insurance policy. Settling Work Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Work Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Work Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. Force Majeure

64.    "Force majeure," for purposes of this First Amended Consent Decree, is defined as any event arising from causes beyond the control of the Settling Work Defendants, of any entity controlled by Settling Work Defendants, or of Settling Work Defendants' contractors, that delays or prevents the performance of any obligation under this First Amended Consent Decree despite Settling Work Defendants' best efforts to fulfill the obligation. The requirement that the

Settling Work Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent practicable. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

65.    If any event occurs or has occurred that may delay the performance of any obligation under this First Amended Consent Decree, whether or not caused by a force majeure event, the Settling Work Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, the Director of the Emergency and Remedial Response Division, EPA Region 2, within forty-eight (48) hours of when Settling Work Defendants first knew that the event might cause a delay. Within five (5) days thereafter, Settling Work Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Work Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Work Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Work Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Work Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Work Defendants shall be

74

deemed to know of any circumstance of which Settling Work Defendants, any entity controlled by Settling Work Defendants, or Settling Work Defendants' contractors knew or should have known.

66.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this First Amended Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Work Defendants in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Work Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

67.     If the Settling Work Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Work Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Work Defendants complied with the requirements of Paragraphs 64 and 65, above. If Settling Work Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Work Defendants of the affected obligation of this First Amended Consent Decree identified to EPA and the Court.

## XIX.  **Dispute Resolution**

68.       Unless otherwise expressly provided for in this First Amended Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this First Amended Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Work Defendants that have not been disputed in accordance with this Section.

69.       Any dispute which arises under or with respect to this First Amended Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 30 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

70.       Statements of Position.

a.       In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within fourteen (14) days after the conclusion of the informal negotiation period, Settling Work Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Work Defendants.  The Statement of Position shall specify the Settling Work Defendants' position as to whether formal dispute resolution should proceed under Paragraph 71 or Paragraph 72.

76

      b.      Within thirty (30) days after receipt of Settling Work Defendants' Statement of Position, EPA will serve on Settling Work Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 71 or 72. Within fourteen (14) days after receipt of EPA's Statement of Position, Settling Work Defendants may submit a Reply.

      c.      If there is disagreement between EPA and the Settling Work Defendants as to whether dispute resolution should proceed under Paragraph 71 or 72, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Work Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 71 and 72.

      71.      Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under the Original Consent Decree or this First Amended Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to the Original Consent Decree or this First Amended Consent Decree. Nothing in this First Amended Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the OU2 or OU3 ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.     The Director of the Emergency and Remedial Response Division, EPA Region 2, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 71.a. This decision shall be binding upon the Settling Work Defendants, subject only to the right to seek judicial review pursuant to Paragraph 71.c. and d.

c.     Any administrative decision made by EPA pursuant to Paragraph 71.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Work Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this First Amended Consent Decree. The United States may file a response to Settling Work Defendants' motion.

d.     In proceedings on any dispute governed by this Paragraph, Settling Work Defendants shall have the burden of demonstrating that the decision of the Emergency and Remedial Response Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 71.a.

72.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.     Following receipt of Settling Work Defendants' Statement of Position submitted pursuant to Paragraph 70, the Director of the Emergency and Remedial Response Division, EPA Region 2, will issue a final decision resolving the dispute. The Emergency and Remedial Response Division Director's decision shall be binding on the Settling Work Defendants unless, within 10 days of receipt of the decision, the Settling Work Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Work Defendants' motion.

b.     Notwithstanding Paragraph R of Section I (Background) of this First Amended Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

c.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Work Defendants under this First Amended Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 81. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this First Amended Consent Decree. In the

79

event that the Settling Work Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. Stipulated Penalties

73.     Settling Work Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 74 and 75 to the United States for failure to comply with the requirements of this First Amended Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Work Defendants shall include completion of the activities under this First Amended Consent Decree or any work plan or other plan approved under the Original Consent Decree and/or this First Amended Consent Decree identified below in accordance with all applicable requirements of law, this First Amended Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to the Original Consent Decree and/or this First Amended Consent Decree and within the specified time schedules established by and approved under this First Amended Consent Decree. De Minimis Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraph 75 to the United States for failure to direct the escrow agent for the escrow account referred to in Paragraph 60 above to pay the escrowed funds to the Performance Guarantee Trust in accordance with the requirements of Paragraph 60.

74.     Stipulated Penalty Amounts - Work/Reports

a.     The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 74.b.:

Penalty Per Violation Per Day | Period of Noncompliance

$2,500            1st through 14th day

$5,000            15th through 30th day

$10,000           31st day and beyond

       b.     Compliance Milestones.

(1) Implementation of the substantive Work Activities required in the submittals listed in (3) through (10), below, and as further described in the Remedial Design Work Plan;

(2) Implementation of any substantive Work Activities in accordance with any Work Plan submitted by Settling Work Defendants and approved by EPA pursuant to Section VII of this First Amended Consent Decree;

(3) Deadlines for submission and, if necessary, revision and resubmission of the Remedial Design Work Plan;

(4) Deadlines for submission and, if necessary, revision and resubmission of the Preliminary (35%) Design Report;

(5) Deadlines for submission and, if necessary, revision and resubmission of the Pre-Final (95%) Design Report;

(6) Deadlines for submission and, if necessary, revision and resubmission of the Final (100%) Design Report;

(7) Deadlines for submission and, if necessary, revision and resubmission of the Remedial Action Work Plan;

(8) Deadlines for Remedial Action, as specified in the Remedial Action Work Plan or approved Design Report;

81

(9)  Deadlines for submission and, if necessary, revision and resubmission of the long-term Monitoring Plan associated with the remediation of the source areas; and,

(10)  Deadlines for submission and, if necessary, revision and resubmission of the Notice of Completion and Final Report for Remedial Action.

75.  Stipulated Penalty Amounts - Miscellaneous

a.  The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports, payments, or other written documents pursuant to any of the following requirements specified in 1 through 5 below:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th day |
| $ 2,000 | 15th through 30th day |
| $ 4,000 | 31st day and beyond |

1. Performance Guarantee pursuant to Section XIII of the First Amended Consent Decree;

2. Submission of the name of the Project Coordinator to EPA;

3. Reporting Requirements set forth in Section X;

4. Compliance with any requirement of this First Amended Consent Decree not otherwise included in 1-10 in Paragraph 74.b., above; and,

82

       5. Requirements for the payment of all costs or interest required by this First Amended Consent Decree.

      76.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 88 of Section XXI (Covenants by Plaintiff), Settling Work Defendants shall be liable for a stipulated penalty in the amount of $750,000. EPA agrees that any stipulated penalty assessed against Settling Work Defendants pursuant to this paragraph shall be reduced, if appropriate, by the percentage of Work completed by Settling Work Defendants (to be determined by EPA in its sole discretion). Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 48 (Funding for Work Takeover) and 88 (Work Takeover).

      77.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Work Defendants of any deficiency; (2) with respect to a decision by the Director of the Emergency and Remedial Response Division, EPA Region 2, under Paragraph 71.b. or 72.a. of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Work Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date

that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

78.     Following EPA's determination that Settling Work Defendants or De Minimis Settling Defendants have failed to comply with a requirement of this First Amended Consent Decree, EPA may give Settling Work Defendants or De Minimis Settling Defendants written notification of the same and describe the noncompliance. EPA may send such Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified such Settling Defendants of a violation.

79.     All penalties accruing under this Section shall be due and payable to the United States within 30 days of the pertinent Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless, in the case of the Work Settling Defendants, Settling Work Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be paid in accordance with the payment procedures set forth in Paragraph 57.c. All payments shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #02-BT, the DOJ Case Number 90-11-3-480/4, and the name and address of the party making payment. At the time of payment, the pertinent Settling Defendants shall send notice that payment has been made to the United States, to EPA, and to the EPA Cincinnati Finance Office, in accordance with Section XXVI (Notices and Submissions).

84

80.     The payment of penalties shall not alter in any way Settling Work Defendants'
obligation to complete the performance of the Work required under this First Amended Consent
Decree.

81.     As to the Settling Work Defendants, penalties shall continue to accrue as provided
in Paragraph 77 during any dispute resolution period, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not
appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15
days of the agreement or the receipt of EPA's decision or order;

b.      If the dispute is appealed to this Court and the United States prevails in
whole or in part, Settling Work Defendants shall pay all accrued penalties determined by the
Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as
provided in Paragraph 81.c.;

c.      If the District Court's decision is appealed by any Party, Settling Work
Defendants shall pay all accrued penalties determined by the District Court to be owing to the
United States into an interest-bearing escrow account within 60 days of receipt of the Court's
decision or order.  Penalties shall be paid into this account as they continue to accrue, at least
every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent
shall pay the balance of the account to EPA or to Settling Work Defendants to the extent that
they prevail.

82.     If Settling Work Defendants or De Minimis Settling Defendants fail to pay
stipulated penalties when due, the United States may institute proceedings to collect the
penalties, as well as interest.  Settling Work Defendants or De Minimis Settling Defendants, as

85

applicable, shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 79.

83.     Nothing in this First Amended Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this First Amended Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the First Amended Consent Decree.

84.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this First Amended Consent Decree.

## XXI.  Covenants by Plaintiff

85.     Covenant Not to Sue Settling Defendants.  In consideration of the actions that have been performed under the Original Consent Decree and will be performed under this First Amended Consent Decree and the payments that have been made under the terms of the Original Consent Decree and will be made under the terms of the First Amended Consent Decree by the Settling Defendants, and except as specifically provided in Paragraph 87 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) for performance of the Work, for recovery of Past Response Costs and Future Response Costs, and for the performance of, or payment for, OU3 response

86

action. To the extent these covenants were provided under and went into effect under the Original Consent Decree, they shall continue to be in effect under this First Amended Consent Decree. To the extent these covenants are provided under this First Amended Consent Decree but were not included in the Original Consent Decree, these covenants not to sue or take administrative action shall take effect (A) with respect to the Settling Work Defendants, upon the receipt by EPA of the payment required by Paragraph 54.a of Section XVI (Payments for Response Costs) and (B) with respect to the De Minimis Settling Defendants, upon the notification to the United States required under Paragraph 60.a. that the required payment of funds held in the escrow account referred to therein has been received by the Performance Guarantee Trust. With respect to the Settling Work Defendants, these covenants are conditioned upon the satisfactory performance by Settling Work Defendants of their obligations under this First Amended Consent Decree. With respect to each De Minimis Settling Defendant, individually, these covenants are conditioned upon the veracity of the information provided to EPA by that Settling Defendant relating to its involvement with the Sites. These covenants extend only to the Settling Defendants and do not extend to any other person.

86. Covenant Not to take Administrative Action against Settling Federal Agency. In consideration of the payments that were made by the Settling Federal Agency under the terms of the Original Consent Decree and the payments that will be made by the Settling Federal Agency under the terms of this First Amended Consent Decree, and except as specifically provided in Paragraph 87 of this Section, EPA covenants not to take administrative action against the Settling Federal Agency pursuant to Sections 106 and 107(a) of CERCLA for performance of the Work, for the performance of Operable Unit One at the ARC Site, for recovery of Past Response Costs and Future Response Costs, and for the performance of, or payment for, OU3 response

action. To the extent these covenants were provided under and went into effect under the
Original Consent Decree, they shall continue to be in effect under this First Amended Consent
Decree. To the extent these covenants are provided under this First Amended Consent Decree
but were not included in the Original Consent Decree, these covenants by EPA shall take effect
upon the receipt by EPA of the payment required by Paragraph 54.b of Section XVI (Payments
for Response Costs). EPA's covenant is conditioned upon the satisfactory performance by the
Settling Federal Agency of its obligations under this First Amended Consent Decree. EPA's
covenant extends only to the Settling Federal Agency and does not extend to any other person.

      87.    General Reservations of Rights.  A.    The United States reserves, and this First
Amended Consent Decree is without prejudice to, all rights against Settling Defendants, and
EPA and the federal natural resource trustee reserve, and this First Amended Consent Decree is
without prejudice to, all rights against the Settling Federal Agency, with respect to all matters not
expressly included within the United States' covenants in Paragraphs 85 and 86.

      B.    Notwithstanding any other provision of this Consent Decree, the United States
reserves all rights against Settling Defendants, and EPA and the federal natural resource trustees
reserve, and this First Amended Consent Decree is without prejudice to, all rights against the
Settling Federal Agency, with respect to items a.-f. below:

      a.    claims based on a failure by any Settling Defendant or the Settling Federal
Agency to meet a requirement applicable to it under this First Amended Consent Decree;

      b.    liability arising from the past, present, or future disposal, release, or threat
of release of Waste Material outside of the Sites and outside of the area where the response
actions have been or are to be performed under OU3;

        c.        liability for future disposal of Waste Material at the Sites, other than as provided in the OU2 ROD, the Work, or otherwise ordered by EPA, and liability for future disposal of Waste Material in the area where the response actions have been or are to be performed under OU3;

        d.        liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

        e.        criminal liability;

        f.        liability for additional operable units at the Sites.

        C.        Further, notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Work Defendants, and EPA and the federal natural resource trustees reserve, and this First Amended Consent Decree is without prejudice to, all rights against the Settling Federal Agency, with respect to items g.-k. below:

        g.        liability with respect to potential remediation of contaminated soils in the Easement Area and the Buffer Area at the Sites that are not remediated as part of the Work;

        h.        liability for remediation of groundwater if it becomes technically practicable;

        i.        liability for violations of federal or state law which occur during or after implementation of the Remedial Action;

        j.        liability, prior to Certification of Completion of the Work, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 13 (Modification of the SOW or Related Work Plans);

and

k.      liability for costs that the United States will incur related to the Sites but are not (a) within the definition of Past Response Costs or Future Response Costs or (b) costs of implementation of OU3 response action.

If information is discovered that indicates that a Settling Defendant listed in Appendix H ("List of De Minimis Settling Defendants") contributed hazardous substances to the Sites in such greater amount or of such greater toxic or other hazardous effects that such Settling Defendant no longer qualifies as a *de minimis* party at the Sites because such Settling Defendant individually contributed greater than one percent (1%) of the hazardous substances at the Sites or contributed hazardous substances that are significantly more toxic or are of significantly greater hazardous effect than other hazardous substances at the Sites, the United States also reserves all rights with respect to items g.-k. above against such Settling Defendant.

88.     Work Takeover.

a.      In the event EPA determines that Settling Work Defendants have (i) ceased implementation of any portion of the Work, or (ii) are seriously or repeatedly deficient or late in their performance of the Work, or (iii) are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the Settling Work Defendants. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Work Defendants a period of 30 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.     If, after expiration of the 30-day notice period specified in Paragraph 88.a., Settling Work Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover"). EPA shall notify Settling Work Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 88.b.

c.     Settling Work Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 71, to dispute EPA's implementation of a Work Takeover under Paragraph 88.b. However, notwithstanding Settling Work Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 88.b. until the earlier of (i) the date that Settling Work Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Section XIX (Dispute Resolution), Paragraph 71, requiring EPA to terminate such Work Takeover.

d.     After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any performance guarantee(s) provided pursuant to Section XIII of this Consent Decree, in accordance with the provisions of Paragraph 48 of that Section. If and to the extent that EPA is unable to secure the resources guaranteed under any such performance guarantee(s) and the Settling Work Defendants fail to remit a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed, all in accordance with the provisions of Paragraph 48, any unreimbursed costs incurred by EPA in performing

91

Work under the Work Takeover shall be considered Future Response Costs that Settling Work Defendants shall pay pursuant to Section XVI (Payment for Response Costs).

89. Notwithstanding any other provision of this First Amended Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. Covenants by Settling Defendants and Settling Federal Agency

90. Covenant Not to Sue by Settling Defendants. Subject to the reservations in Paragraph 92, and except as otherwise provided herein, including without limitation in Paragraph 55, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions at the Sites for OU1, OU2, and OU3, Settling Defendants' Operable Unit One Response Costs, Settling Defendants' Operable Unit Two Response Costs, Settling Defendants' Operable Unit Three Past Response Costs, Past Response Costs, Future Response Costs, the performance of or costs of implementation of OU3 response action, and this Consent Decree, including, but not limited to:

> a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

> b. any claims against the United States, including any department, agency or instrumentality of the United States, under CERCLA Sections 107 or 113 related to the Sites, or

92

c.      any claims arising out of response actions at or in connection with the

Sites, including any claim under the United States Constitution, the Tucker

Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412,

as amended, or at common law.

Except as provided in Paragraph 98 (waiver of Claim-Splitting Defenses), these covenants not to

sue shall not apply in the event that the United States brings a cause of action or issues an order

pursuant to the reservations set forth in Paragraph 87(b)-(d), 87(f)-(h), or 87(j)-(k), but only to

the extent that Settling Defendants' claims arise from the same response action, response costs,

or damages that the United States is seeking pursuant to the applicable reservation.

91.    Covenant by Settling Federal Agency.  Settling Federal Agency hereby agrees not

to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund

(established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA

Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law with respect to the Work,

past response actions at the Sites, Settling Defendants' Operable Unit One Response Costs,

Settling Defendants' Operable Unit Two Response Costs, Settling Defendants' Operable Unit

Three Past Response Costs, Past Response Costs, Future Response Costs, and costs of

implementation of OU3 response action.  This covenant does not preclude demand for

reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the

performance of its duties (other than pursuant to this First Amended Consent Decree) as lead or

support agency under the National Contingency Plan (40 C.F.R. Part 300).

92.    The Settling Defendants reserve, and this First Amended Consent Decree is

without prejudice to: (a) claims against the United States, subject to the provisions of Chapter

93

171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Work Defendants' plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA; (b) Settling Work Defendants further reserve, and this First Amended Consent Decree is without prejudice to claims against the United States for failure to meet the Settling Federal Agency's payment requirements of this First Amended Consent Decree; or (c) contribution claims against the Settling Federal Agency in the event any claim is asserted by the United States against the Settling Defendants under the authority of or under Paragraph 87(b)-(d), 87(f)-(h), or 87(j)-(k) of Section XXI (Covenants by Plaintiff), but only to the same extent and for the same matters, transactions, or occurrences as are raised in the claim of the United States against Settling Defendants.

93.     Nothing in this First Amended Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## XXIII.  **Effect of Settlement; Contribution Protection**

94.     Nothing in this First Amended Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this First Amended Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law.  Each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613(f)(2)), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Sites against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

95.     The Parties agree, and by entering this First Amended Consent Decree this Court finds, that this settlement constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant and the Settling Federal Agency are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this First Amended Consent Decree.  The "matters addressed" in this settlement are Settling Defendants' Operable Unit One Response Costs, Settling Defendants' Operable Unit Two Response Costs, Settling Defendants' Operable Unit Three Past Response Costs, Past Response Costs, Future Response Costs (including Interim Costs), the performance of or costs of implementation of the OU3 response action, and the Work as defined herein.

95

96.     The Settling Defendants agree that with respect to any suit or claim brought by them for matters related to this First Amended Consent Decree they will notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

97.     The Settling Defendants also agree that with respect to any suit or claim brought against them for matters related to this First Amended Consent Decree they will notify in writing the United States within 10 days of service of the complaint on them. In addition, Settling Defendants shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

98.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Sites, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiff).

## XXIV. Access to Information

99.     Settling Defendants shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Sites or to the implementation of the Original Consent Decree and this First Amended Consent Decree, including, but not limited to, sampling, analysis, chain of custody

96

records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.  Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

      100.   <u>Business Confidential and Privileged Documents</u>.

      a.   Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under the Original Consent Decree or this First Amended Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendants.

      b.   The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each

97

addressee and recipient; (5) a description of the contents of the document, record, or information; and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

101.     No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Sites.

## XXV.  Retention of Records

102.     Until 10 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 51.b of Section XIV (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Sites, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Sites must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Sites.  Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must

98

retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

103.    At the conclusion of this document retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendants shall deliver any such records or documents to EPA. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege, they shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Original Consent Decree or this First Amended Consent Decree shall be withheld on the grounds that they are privileged.

104.    Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Sites since notification of potential liability by the United States or the State or the filing of suit against it regarding the Sites and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and

122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

106. 105. The United States acknowledges that each Settling Federal Agency (1) is subject to all applicable Federal record retention laws, regulations, and policies; and (2) has certified that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXVI. Notices and Submissions

106. Whenever, under the terms of this First Amended Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the First Amended Consent Decree with respect to the United States, EPA, the Settling Federal Agency, and the Settling Defendants, respectively.

As to the United States:

and

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-11-3-480/4

Chief, Environmental Defense Section
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington D.C. 20044-7611
Re: DJ # 90-11-6-16233

As to EPA:

Director, ERRD
United States Environmental Protection Agency
Region II
290 Broadway
New York, NY 10007-1866

and

Attn: ARC and HRDD Sites RPM
ERRD
United States Environmental Protection Agency
Region 2
290 Broadway
New York, NY 10007-1866

As to the EPA Cincinnati Finance Office:

acctsreceivable.cinwd@epa.gov      and
United States Environmental Protection Agency
Cincinnati Finance Office
26 West Martin Luther King Drive
Cincinnati, Ohio  45268

As to the EPA Regional Financial
Management Officer:

Chief, Financial Management Branch
United States Environmental Protection Agency
Region 2
290 Broadway, 29th Floor
New York, NY 10007-1866

As to the State:

Attn: Site Manager
Bureau of Federal Case Management
New Jersey Dept. of Environmental Protection
401 East State Street
P.O. Box 028
Trenton, N.J.  08625-0028

As to the Settling Work Defendants:

Lori Mills, Esq.
Drinker Biddle & Reath
105 College Road East, Suite 300
P.O. Box 627
Princeton, N.J.  08542-0627

As to the De Minimis Settling Defendants:

Irvin M. Freilich, Esq.
Gibbons P.C.
One Gateway Center
Newark, N.J. 07102-5310

101

## XXVII.  **Effective Date**

107.    The effective date of this First Amended Consent Decree shall be the date upon which this First Amended Consent Decree is entered by the Court, except as otherwise provided herein.  Unless and until the First Amended Consent Decree is entered by the Court, the Original Consent Decree shall remain in full force and effect.

## XXVIII.  **Retention of Jurisdiction**

108.    This Court retains jurisdiction over both the subject matter of this First Amended Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this First Amended Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this First Amended Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX.  **Appendices**

109.    The following appendices are attached to and incorporated into this First Amended Consent Decree:

"Appendix A" is the OU2 ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Sites.

"Appendix D" is the draft easement form of Proprietary Control relating to the ARC Site.

"Appendix E" is the draft easement form of Proprietary Control relating to the HRDD Site.

"Appendix F" is the List of Settling Defendants.

"Appendix G" is the List of Settling Work Defendants.

"Appendix H" is the List of De Minimis Settling Defendants.

"Appendix I" is the initial Performance Guarantee Trust Agreement.

"Appendix J" is the RD/RA Environmental Remediation Trust Agreement.

## XXX. Community Relations

110.    Settling Work Defendants shall propose to EPA their participation in the community relations plan to be developed by EPA. EPA will determine the appropriate role for the Settling Work Defendants under the Plan. Settling Work Defendants shall also cooperate with EPA in providing information regarding the Work to the public. As requested by EPA, Settling Work Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Sites.

## XXXI. Modification

111.    Schedules specified in this First Amended Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Work Defendants. All such modifications shall be made in writing.

112.    Except as provided in Paragraph 13 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Work Defendants, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii).  Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Work Settling Defendants.

113.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this First Amended Consent Decree.

## XXXII.  Lodging and Opportunity for Public Comment

114.    This First Amended Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the First Amended Consent Decree disclose facts or considerations which indicate that the First Amended Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry of this First Amended Consent Decree without further notice.

115.    If for any reason the Court should decline to approve this First Amended Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. Signatories/Service

116.    Each undersigned representative of a Settling Defendant to this First Amended Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this First Amended Consent Decree and to execute and legally bind such Party to this document.

117.    Each Settling Defendant hereby agrees not to oppose entry of this First Amended Consent Decree by this Court or to challenge any provision of this First Amended Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the First Amended Consent Decree.

118.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this First Amended Consent Decree.  Settling Defendants agreed in the Original Consent Decree, and continue to agree in this First Amended Consent Decree, to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this First Amended Consent Decree.

## XXXIV. **Final Judgment**

119.    This First Amended Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the First Amended Consent Decree. The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this First Amended Consent Decree, provided, however, that the Original Consent Decree shall remain in full force and effect unless and until this First Amended Consent Decree is entered by the Court.

120.    Upon approval and entry of this First Amended Consent Decree by the Court, this First Amended Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS **22** DAY OF **February**, 201**3**

_____
United States District Judge

106

**FOR THE UNITED STATES OF AMERICA**

11/29/12
Date

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

12/13/12
Date

ELIZABETH YU
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Ph: (202) 514-2277
elizabeth.yu@usdoj.gov

12/14/12
Date

MICHAEL D. ROWE
Environmental Defense Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Ph: (202) 514-3144
michael.rowe@usdoj.gov


PETER O'MALLEY
Assistant United States Attorney
United States Attorney's Office
970 Broad Street
Newark, N.J. 07102

9/27/2012
Date

_Walter Mugdan_

WALTER MUGDAN, Director
Emergency and Remedial Response Division
U.S. Environmental Protection Agency,
        Region II
290 Broadway, New York, NY 10007


9/27/2012
Date

_Clay Monroe_

CLAY MONROE
Assistant Regional Counsel
U.S. Environmental Protection Agency,
        Region II
290 Broadway, New York, NY 10007

108

FOR      JOHNSON & JOHNSON

9/25/2012
Date

Signature:
Name (print):   STEVEN ROSENBERG
Title:       ASSISTANT SECRETARY
Address:    1 J&J Plaza
           New Brunswick, N.J. 08933

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):   Lori A. Mills, Esq.
Title:       Partner
Address:    Drinker Biddle & Reath LLP
           105 College Road East – Suite 300
           Princeton, NJ 08543
Ph. Number:   (609) 716-6632

9/28/12
Date

FOR        PERMACEL

Signature:
Name (print):  J. Michael Prairie, Jr., Esq.
Title:         Secretary
Address:       5th Floor, Suite 66
               300 Frank W. Burr Blvd.
               Teaneck, New Jersey 07666

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Trisha L. Smith, Esq.
Title:        Environmental Counsel to Permacel
Address:      Law Office of Trisha L. Smith
              303 East 76th Street #3
              New York, New York
Ph. Number:   (212) 799-0657_

FOR                3M Company

9/26/12

Date

Signature:

Name (print):   Robert A. Paschke

Title:           Manager, Corporate Environmental
Programs

Address:       3M Center
223-02-S-31
St. Paul, MN  55144-1000

Agent Authorized to Accept Service on Behalf of Above-signed party:

Name (print):   Donald J. Camerson, II
Title:           Attorney
Address:       Bressler, Amery & Ross, P.C.
325 Columbia Turnpike
Florham Park, NJ  07932

FOR:          Lionetti Oil Recovery, Inc.


_9/25/12_
Date

Signature:
Name (print): John Lionetti
Title:        President
Address:      450 South Front Street
              Elizabeth, NJ  07202


Agent Authorized to Accept Service on Behalf of Above-signed Party:


Name (print): Scott T. Smith, Esq.
Title:        Counsel
Address:      Smith Curley, LLC
              476 Broad Street
              Shrewsbury, NJ  07702
Ph. Number:   (732) 747-1102

FOR    Fry's Metals, Inc.

9/25/12
Date

Signature:
Name (print): William S. Gorgone
Title:    Vice President / Secretary
Address:   One Cookson Place
       Providence, RI  02903

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Franklin W. Boenning, Esq.
Title:    Attorney at Law
Address:   1577 Grouse Lane
       Mountainside, NJ  07092

Ph. Number:  908-928-0301

FOR            NOVARTIS CORPORATION


9/25/12
Date

Signature:
Name (print):      Robert Pelzer
Title:             President
Address:           One South Ridgedale Avenue
                   E. Hanover, New Jersey 07936
E-Mail Address:    robert.pelzer@novartis.com


Agent Authorized to Accept Service on Behalf of Above-signed Party:


Name (print):  Irvin M. Freilich
Title:         Attorney for Novartis Corporation
Address:       Gibbons' P.C.
               One Gateway Center
               Newark, NJS 07102
Ph. Number:    (973) 596-4735

FOR      _Essex Chemical Corporation_

9-26-12
Date

Signature: _~~Shan Callahan~~_
Name (print): _Shannon Callahan_
Title: _Authorized Representative_
Address: _100 Independence Mall West_
_Philadelphia, PA 19106_

_215-592-3404_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _The Corporation Trust Company_
Title:
Address: _820 Bear Tavern Road_
_West Trenton, NJ 08628_

Ph. Number:

FOR    Chevron Environmental Management Company, for itself and as Attorney-in-Fact for Kewanee Industries, Inc.

9/25/12
Date

Signature:      _Robert R. John_
Name (print):  Robert R. John
Title:          Assistant Secretary
Address:        6101 Bollinger Canyon Road
                San Ramon, CA 94583

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  Corporation Service Company
Title:          _____
Address:        830 Bear Tavern Road
                West Trenton, NJ 08628

Ph. Number:    _____

FOR     _Union Carbide Corporation_

9-26-12
_____
Date

Signature: _Shannon Callahan_
Name (print): _Shannon Callahan_
Title: _Authorized Representative_
Address: _100 Independence Mall West_
_Philadelphia, PA 19106_

_215-592-3404_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _The Corporation Trust Company_
Title:
Address: _820 Bear Tavern Road_
_West Trenton, NJ 08628_

Ph. Number: _____

FOR          Florida AETC

_24 Sept 12_
Date

Signature: _Ryan Landmesser as Pres._
Name (print): _Ryan W Landmesser_
Title: _Pres_
Address: _3 Goldmine Rd_
_Flanders NJ 07836_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _Robert W. Landmesser_
Title: _President_
Address: _3 Gold Mine Rd_
_Flanders NJ 07836_
Ph. Number: _973 219 6551_

FOR     AT&T Corp.

9/26/12
Date

Signature:
Name (print): Paul Shorb
Title: General Attorney
Address: AT&T Services, Inc.
99 Bedford Street
Suite 420
Boston, MA 02111


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): CT System
Title:
Address: 820 Bear Tavern Road
West Trenton, NJ 08628

Ph. Number: 609-538-1818

FOR THE CITY OF PHILADELPHIA

SHELLY R. SMITH, Esq.
City Solicitor


9/25/12

Date

By:

Dennis Yuen, Esq.
Assistant City Solicitor
The City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Dennis Yuen, Esq.,
Assistant City Solicitor
The City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
(215)-683-5173

**FOR HONEYWELL INTERNATIONAL INC.**

September 29, 2012
_____
Date

Signature: _Richard W. Nulley_
Name (print): _Richard W. Galloway_
Title: _Remediation Manager_
Address: _Honeywell_
_101 Columbia Road_
_Morristown, NJ 07962_
_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____
Title: _____
Address: _____
_____

Ph. Number: _____

ARC- HDD - Consent- decree.

FOR     **ICI AMERICAS INC.**

_9/21/12_
Date

Signature: _____
Name (print): Janice Lucchesi
Title:    VP Tax
Address:  Akzo Nobel Inc.
    525 W. Van Buren
    Chicago, IL 60607

_9/21/12_
Date

Signature: _Amy Shumate_
Name (print): Amy Shumate
Title:    President
Address:  Akzo Nobel Inc.
    525 West Van Buren
    Chicago, IL 60607

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Debra Rubenstein, Esq.
Title:    Senior Regulatory Counsel
Address:  Akzo Nobel Inc.
    120White Plains Road, Suite 300
    Tarrytown, NY 10591-5522
Ph. Number: 914-333-7488

FOR        International Paper Company
           (AntecImageCorp

9.27.12
Date

Signature:
Name (print): Dean Vaughan
Title: Asst. General Counsel
Address: 6400 Poplar Ave
Memphis, TN
38197


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Steve Ginski
Title: Chief Counsel - Health Safety & Remediation
Address: 6400 Poplar Ave
Memphis, TN
38197
Ph. Number: 901-419-3808
Steve.ginski@paper.com

Consent Decree

FOR    ITT Corporation

9/24/12
Date

Signature: _____
Name (print): Burt M. Fealing
Title: SVP, General Counsel and Secretary
Address: 1133 Westchester Ave.
White Plains, NY 10604
_____
_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Fern Fleischer Daves
Title: AGC
Address: 1133 Westchester Ave.
White Plains, NY 10604

Ph. Number: (914) 641-2148

FOR          JPMorgan Chase Bank, N.A.

_____
Date

Signature: _____
Name (print): WMCHENRY
Title: MD
Address: 287 Park Ave, New York
NY.
_____
_____
_____


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____
Title: _____
Address: _____
_____
_____

Ph. Number: _____

FOR   North Jersey Media Group Inc.

9/24/12
Date

Signature: _____
Name (print): Jennie A. Borg
Title: Vice President, General Cansel, + Corporate Secretar
Address: P.O. Box 75
Hackensack, NJ 07602
_____
_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____
Title: _____
Address: _____
_____
_____

Ph. Number: _____

FOR    Philips Electronics North America

Corporation, on behalf of Magnavox

September 24, 2012
Date

Signature: _____

Name:    Joseph E. Innamorati
Title:    Senior Vice President

Address: Philips Electronics North America
         Corporation
         3000 Minuteman Road, Building One
         Andover, MA  01810

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Corporation Service Company
Title:    Authorized Agent for Service of Process
Address:  830 Bear Tavern Road
          West Trenton, NJ 08628
Phone:    888-690-2882

FOR        Robert Wood Johnson
           University Hospital Rahway

9-25-12
Date

Signature:
Name (print):    Kirk C. Tice
Title:    President & CEO
Address:    865 Stone Street
            Rahway, NJ 07065


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):    Kevin M. Kramer
Title:    VP. of legal Affairs & General Counsel
Address:    865 Stone Street
            Rahway, NJ 07065

Ph. Number:    732-499-6080

FOR        SAINT PETER'S UNIVERSITY HOSPITAL, INC.

9/25/12
Date

Signature: _____
Name (print): Garrick Stoldt
Title: Chief Financial Officer
Address: 254 Easton Avenue
New Brunswick, NJ

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Andrew B. Robins, Esq.
Title: Attorney for St. Peter's
Address: Sills, Cummis & Gross
One Riverfront Plaza
Newark, NJ 07102
Ph. Number: 973-643-5277

FOR _Polychrome, Inc_
by _Sun Chemical Corporation_

Signature: _____

Name (print): ERIC R. FINKELMAN

Title: Vice President, General Counsel & Secretary

Address: 35 Waterview Boulevard

Parsippany, New Jersey 07054

_9/24/12_
Date

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):   Eric R. Finkelman

Title:   Vice President, General Counsel & Secretary

Address:   Sun Chemical Corporation

35 Waterview Boulevard

Parsippany, New Jersey 07054

Ph. Number: _____ (973) 606-6550